## WILLIAMS *vs.* SHELDON and others.

Where several individuals act in concert in entering upon a lot of land and cutting and carrying away timber, they are *jointly liable* in an action of trespass, although they do not participate as partners share and share alike, in the avails of the trespass.

It is no objection to an *exemplification of letters patent*, granted in 1787, that the name of the *governor* of the state *pro tempore* does not appear subscribed to it, and that the letters L. S., designating the place of the *great seal*, do not appear upon it; it being judicially known that at that period, and long after, the seal was *appended* to patents instead of being impressed upon its face; and the legal presumption being that no patent would be issued or recorded, unless executed in due form of law.

THIS was an action of *trespass* for entering upon a lot of the plaintiff, and cutting and carrying away pine logs, tried at the Oneida circuit in April, 1831, before the Hon. NATHAN WILLIAMS, one of the circuit judges.

The suit was brought against *eight* defendants, who *separately* put in a plea of not guilty. The plaintiff proved the cutting and carrying away of about 150 saw-logs; that a road was made to his lot for the purpose of taking timber from it; that all the defendants, about the same period of time, were engaged in committing trespasses upon the lot; that there was a shanty erected on it, in which the defendants slept and eat their meals, near to which the logs were cut, and that they quit the premises at the same time. On the part of the defendants, it was proved that although they all got logs from the plaintiff's lot, it was not a joint concern, inasmuch as A. and B. worked together, and C. and D. by themselves, and E. on his own account, and that the proportions of the spoils varied, some having taken more than the others. The judge charged the jury that to entitle the plaintiff to a verdict against all the defendants as *joint trespassers*, the jury must be satisfied that the defendants acted in concert; that those who aided and assisted in committing the trespass or assented thereto having an interest therein, were as guilty as the others; that it was not material if some had a greater interest in the avails of the trespass than others, for the reason that those who con-

ALBANY,
Oct. 1833.

Williams
v.
Sheldon.

federate to do an unlawful act are deemed in law guilty of the whole, although their share in the profits may be small; but if the jury were satisfied that any of the defendants were acting separately and for themselves, without any concert with the others, they ought to be acquitted, and those only found guilty who acted jointly in the committing of the trespass. The jury found *all* the defendants guilty, and assessed the damages at $198. The following question arose on the trial as to the evidence of the plaintiff's right to the property, who deduced a regular title by sundry mesne conveyances from *Thomas Matchin,* the original patentee, of a tract of which the *locus in quo* is a part. To prove the patent to *Matchin,* the plaintiff produced an exemplification of letters patent from the state to Matchin for a tract of land called the Woodhull township, in which the premises in question are situated, bearing date 13th June, 1788, signed, "Robert Harpur, Dep. Sec'y," and certified by him to be a true copy of letters patent, as of record in that office, with the seal of office thereunto affixed, impressed on the paper. This was objected to as evidence, 1. Because there was no wax or adhesive substance for a seal; 2. Because it was not signed by the governor or one of the commissioners of the land office; and 3. That by the terms of the letters patent, the lands thereby granted were granted on condition that there should be an actual settler on every 600 acres, which condition had not been complied with. The objection was overruled and the exemplification read in evidence; to which decision, as well as to the charge of the judge to the jury, the defendants excepted, and now moved for a new trial.

*A. Bennett,* for defendants.

*J. A. Spencer,* for plaintiff.

*By the Court,* SUTHERLAND, J. The only questions which arose upon the trial were, first, whether a joint trespass had been established against *all* the defendants, and secondly, whether the exemplification of the patent for the Woodhull

ALBANY,
Oct. 1833.

Williams
v.
Sheldon.

township to Thomas Matchin, from whom the plaintiff deriv-
ed his title, was properly admitted in evidence.

Upon the first point the evidence was abundantly sufficient
to justify the judge in submitting it as a question of fact to the
jury. His charge was unexceptionable. He instructed the
jury that to entitle the plaintiff to a verdict against all the de-
fendants as joint trespassers, it must appear that they acted in
concert in committing the trespass complained of; that if
some aided and assisted the others in the trespass, all were
equally guilty; or if some employed the others to commit the
trespass, or assented to the trespass committed by the others,
having an interest therein, they were all jointly guilty; and
in commenting upon the evidence to the jury, he again ob-
served that they must be convinced from the evidence that
all the defendants were acting in concert in the trespass in
question, or they could not all be found guilty; but it would
not be material, if they had unequal interests in the avails of
the trespass, for that those who confederated to do an unlaw-
ful act are deemed guilty of the whole, although their share
in the profits may be small. But if any of the defendants
were not guilty at all, or if any of them, though guilty, were
acting separately and for themselves alone, without any con-
cert with the others, they ought to be acquitted, and those
only found guilty who were acting jointly. This is a correct
exposition of the law, and embraces substantially all the
points upon which the judge was requested to charge speci-
fically. The jury, under this charge, having found all the
defendants jointly guilty, it is not a case for this court to in-
terfere with their verdict. All the defendants were seen upon
the lot, engaged in cutting or carrying away timber, at differ-
ent times. Whether they were jointly concerned or not was
a matter of inference from all the circumstances of the case.
They used one common road, made expressly for the purpose
of getting timber from the lot; they also had a common shed
or temporary house, to which all their logs were drawn for
the purpose of being loaded on their sleighs, and where their
shingles were made, and where they occasionally slept, &c.
It is fairly to be presumed that this road and house at least
were made by the joint labor or at the common expense of all.

On the whole, I think the evidence of concert or combination was sufficient to justify a verdict against the defendants as joint trespassers.

ALBANY,
Oct. 1833.

Williams
v.
Sheldon.

2. The exemplification of the patent to Matchin, from whom the plaintiff derived his title, was objected to, 1. Because the original did not purport to have been sealed with wax, or other adhesive substance; 2. Because it was not signed by the governor, or any one of the commissioners of the land office, &c.; 3. Because it was granted upon the condition that there should be a settler on every 600 acres, which condition did not appear to have been complied with. A copy of the letters patent is not given in the case, nor a *fac simile* of the manner of its execution. The case states, that the plaintiff then introduced an instrument purporting to be an exemplification of letters patent from the state of New-York to Thomas Matchin, dated the 13th day of June, 1788, signed Rob't Harper, deputy secretary, and certified by him to be a true copy of letters patent, as of record in that office, with the seal of office thereunto affixed, impressed on the paper. The objection made to the introduction of this instrument, as stated in the case, was, that there was no wax or adhesive substance for a seal, and that it was not signed by the governor, nor any one of the commissioners of the land office. The exemplification would not shew in what manner the original was sealed, whether by an impression upon wax or wafer upon the patent itself, or by a large wax seal appended and fastened to the patent. I presume the real objection was, that upon the patent as recorded, and the exemplification thereof, there was no L. S. to indicate that the original had been sealed. It appears from an examination made at the secretary's office of the records of letters patent issued in 1787, 8, to the number of more than 100, that none of them have upon them L. S., or any other character representing the place of the seal, and that several of them have not the name of the governor, nor any other name to them, except that of the secretary or deputy secretary; and it also appears that those records have always been deemed and regarded as the records of patents duly issued, and are exemplified as such, when called for, in the same manner as those to which the name of the governor is

signed.   The question then is not whether a patent is valid, and will pass the title to land, if issued without a seal; but whether the fact that in the record of the patent the words L. S. do not appear to designate the place of the seal, is to be regarded as evidence that the original was not sealed.   The fact undoubtedly is, that the seal was appended to the patent, instead of being impressed upon its face; most, if not all the early patents were sealed in that way.   In copying such a patent the L. S. would very naturally be omitted, as no place for a seal, corresponding with the original, would in fact exist, on the face of the patent.   Seals to all instruments conveying land have been in use in this state, from its earliest settlement, and it is not to be presumed that it was omitted in so solemn a grant as an original patent, issued by the state, under the supervision and direction of its public authorized officers; or that if omitted, so defective an instrument would have been recorded by them.   The act concerning the commissioners of the land office, and the sale of unappropriated lands, 1 *R. L.* 292, does not prescribe the form of the patents to be granted, nor direct that they shall be signed by the governor, or any other officer, but leaves those matters to be regulated by the commissioners of the land office.   *Section 5.*  ·The governor has the custody of the great and privy seal, 1 *R. L. of* 1801, *page* 203, § 5, and 1 *R. L. of* 1813, *page* 459, § 6; and in practice, probably, generally signed all patents that were issued; but it is the great seal which authenticates the patent, and that, I apprehend, is *per se* to be regarded as prima facie evidence that the patent is approved of by the commissioners of the land office, of whom the governor is one, and has been issued by their direction.   *Jackson* v. *Douglas, 5 Cowen, 460.*

No one but the state can take advantage of an omission on the part of the patentee, to comply with the condition of the grant.   I am of opinion, therefore, that the exemplification of . the patent was properly received in evidence, and that the motion for a new trial should be denied.