1844.

Armour
v.
Alexander.

---

ARMOUR *vs.* ALEXANDER.

Where A. owned the pre-emptive right, under the act of March, 1823, to lot No. 7, and to ten acres of lot No. 9 in the Stockbridge West Hill tract, and B. owned the pre-emptive right to the residue of lot No. 9 ; and A. with the knowledge and consent of B. sold to C. his interest in lot No. 7 and in the ten acres of lot No. 9, and C. obtained the title to lot No. 7 from the state, but was unable to obtain the title to the ten acres of lot No. 9, because B. neglected to pay his share of the amount due to the state, as he had agreed to do ; and B. afterwards obtained the passage of an act of the legislature giving him the pre-emptive right to purchase the whole of lot No. 9, upon the same terms as were prescribed in the original act of March, 1823 ; *Held,* that the act, giving to B. the pre-emptive right to the whole of lot No. 9, enured to the benefit of C. as to the ten acres ; and that C. was entitled to that part of lot No. 9, upon payment of his just proportion of the purchase money paid to the state.

The good will of the state to give to actual settlers the benefit of their improvements, and the pre-emptive right to purchase the lands upon which they have settled, is a fair subject of contract. And such contracts are govern-

ed by the same principles as contracts respecting the good will of the re-
newal of leases.

Interests in such good will are treated by the court of chancery as valuable
*interests, and are protected by it accordingly.*

March 5.

THIS was an appeal by the defendant from a decree of
the vice chancellor of the fifth circuit. James Alexander,
the brother of the defendant, owned or claimed to own the
pre-emptive right, under the act of March, 1823, to lot
No. 7, and to ten acres of lot No. 9 in the New Stockbridge
West Hill tract, and the defendant owned the pre-emptive
right to the residue of lot No. 9. And with the knowl-
edge and consent of the defendant, James Alexander sold
to the complainant his interest in No. 7 and the ten acres of
No. 9. The first lot the complainant paid for, and obtained
the title thereto from the state ; but was unable to obtain the
title to the ten acres, because the defendant, who was enti-
tled to the pre-emptive right to the residue of that lot, neg-
lected to furnish or pay his share of the amount due to the
state, as he had agreed to do. The defendant afterwards
applied to the legislature and obtained the passage of an
act giving him the pre-emptive right to purchase the whole
of lot No. 9, upon the same terms and conditions as were
contained in the original act of March, 1823. And he then
refused to permit the complainant to participate in the ben-
efit of that pre-emption upon payment of his share of the
purchase money and of the expenses.

*T. Jenkins*, for appellant.

*H. Denio*, for respondent.

THE CHANCELLOR. I have no doubt the decision of the
vice chancellor was right in this case, upon the settled
principles of equity. It is true, that as between the people
of the state and these settlers upon Indian lands, the set-
tlers had no legal rights, or any other rights except such as
depended upon the good will of the legislature. Still, as
between themselves, the good will of the state to give to

actual settlers the benefit of their improvements, and the pre-emptive right of purchase, the exercise of which good will was a matter of frequent occurrence, was a fair subject of contract between them. Contracts in respect to such rights depend upon the same principles as contracts respecting the good will of renewal in leases, where the landlord is in the habit of renewing from time to time upon such terms and conditions as he may think fit to prescribe. And this court constantly treats interests in such good will as valuable interests, and protects them accordingly. (*See Phyfe* v. *Wardell*, 5 *Paige's Rep.* 279, *and cases there referred to.*)

Here, it is evident that the defendant obtained the passage of the act giving him the pre-emptive right to purchase the whole lot, upon the supposed equity arising from the previous act of 1823, and the refusal of his brother to join in the application for the act. That refusal of the brother, however, after he had parted with his interest to the complainant, did not justify the defendant in equity in depriving the complainant of his share of the lot; especially as his right to pre-emption under the previous law had been lost by the neglect of the defendant himself. In the recent case of *Felt* v. *Kinney*, (*In Chan., Dec. 5th*, 1843,) this court went still further, and held that where the rights which two parties, under a state certificate, had in lands, were sold, in consequence of the neglect of both to pay their shares of the money due to the state, the one could not become the purchaser on his own account solely, without giving the other the right to share in the benefit of the purchase, on equitable terms.

But here, the equity of the complainant is much stronger. For the proof shows that the defendant had agreed to pay his proportion of the money to secure the original right of pre-emption, and that owing to his neglect to furnish his proportion of the money the complainant was unable to obtain the title for his ten acres. Whatever may have been the merits of the controversy between the defendant and his brother James, the latter could not confess away or deprive the complainant of any of his rights, after a sale

of his whole interest in the land, and with the knowledge of the defendant. And I agree with the vice chancellor, that there is no sufficient evidence that the complainant himself ever intended to relinquish his claim to the ten acres of the lot No. 9; although he had a right to suppose that he would have a claim against James Alexander, personally, if the pre-emptive right to the ten acres should be defeated by the misconduct of the latter. The legislature might, in this case, grant the second pre-emptive right to the defendant, for his own use and benefit, if they thought proper to do so. But it is perfectly evident that they never would have done so upon any others terms and conditions than that the complainant should be entitled to his share of the lot, upon paying his just proportion of the purchase money, if all the facts and circumstances had been stated in the defendant's petition, correctly and truly, as they appear by the pleadings and proofs in this case; unless the legislature had been satisfied that a court of equity would compel the defendant to do what was just towards the complainant.

The question whether James Alexander has discharged his claim to payment for the lot, by releasing the surety upon the note, is one between him and the complainant, with which the defendant has no concern. For the complainant's equitable rights as against the defendant are the same, whether James Alexander does or does not think proper to collect the debt which is due to him. The decree appealed from must be affirmed with costs; and the reference which was directed to a particular master, may be executed by any master in the county of Madison if the master named in the decree is not now in office.