By the Court.—Robertson, J.
The plaintiff is bound to make out one or more of the following principles to entitle him to recover in this action.
1st. That the proviso in the Statute of 1807 (Laws relating to City of New York, 434, § 15 [Davies],) under which the Corporation of the City of New York derived title to the lands in controversy, requiring them in case of any conveyance of such lands, to recognize a pre-emptive right in the owners of the adjacent upland,' operated • not merely as a partial 'restraint on alienation by such Corporation, but conferred some new positive indefeasible right to, or interest in, such lands, upon such owners of such upland.
2d. That according to the legal interpretation of the language of the grant to the heirs of Mrs. Clarke, the condition therein contained defeating it, in case they should not prove to be the owners of the upland, was precedent and not subsequent to the vesting of any estate by virtue thereof.
3d. That the right of forfeiture and re-entry, in case such con *88 dition. were determined so as to defeat the estate conveyed by such grant, conld be transferred by such city corporation to those under whom the plaintiff claimed.
I omit to inquire, as unnecessary for the present, whether the subjection of the grant to such corporation, by the statute before mentioned, to a right of pre-emption by riparian owners in case of alienation by the former, would convert the condition in such Clarke grant into a precedent one ; although not made so by the terms of the instrument itself, construed according to their legal import and effect, or would render the grant itself absolutely void because not made subject to such a condition preee- ' dent. The principles already stated require first to be disposed of, as, if the adjacent riparian owners had no right available in law by them, in their own names, or if the condition before mentioned was subsequent, and the right of re-entry for its happening could not be conveyed by the city corporation, the plaintiff could not recover.
As to such first principle, it is to be observed that the People of the State of Hew York could grant lands absolutely or conditionally, by an act of the Legislature directly, or by an agent authorized under such an act: that in case of an absolute grant, the Legislature could not repeal such act so as to avoid such " grant: and that in case, of a conditional grant it would only "re-enter by proceedings taken to annul such grant (People v. Mauran, 5 Den., 389; Williams v. Sheldon, 10 Wend., 654; Jackson v. Marsh, 6 Cow., 281; Jackson v. Lawton, 10 Johns., 22; Sawe v. Hart, 12 Johns., 76; Bledsoe v. Well, 4 Bibb, 329; Bassell v. Broderieh, supra;) unless in case of a condition precedent. Thus grants of land under water by the Commissioners of the land office in all other parts of the State except the City of Hew York, are declared by statute to be void unless made to the owners of the adjacent upland (1 R. S., 208, § 67) in order to accomplish that specific result. Prior statutes on the subject, differed therein from such statute (2 Rev. notes, p. 29; 1 N. Y. L. [Greenl.], 284, § 18; 1 L. N. Y., [K. & R.] 299, § 11; 1 R. S. 292, § 4); and received a different construction judicially, (Champlain and St. L. R. R. Co. v. Valentine, 19 Barb., 484); and a prior statute not containing such express provision avoiding a grant, but one similar to the statute under consideration, was Aso differently construed, in a cáse (People v Mauran, ubi sup.) where an attempt was made to impeach collaterally the validity of a *89 grant by the Commissioners of the Land office, by showing that the grantor was not owner of the adjacent upland.
The well known mode, in a statute, of restraining, or qualifying a right previously granted by a proviso, cannot be used to extend one, particularly when it immediately succeeds the grant intended to be restrained or qualified (Dwarris on Statutes). And it is very evident that the proviso under consideration could not take or have any effect while the City Corporation should continue to hold the property granted, even if perpetually. During the term the land under water was so held, the upland might pass through a hundred hands, be subdivided into numerous parcels, and each be held by different, intricate and embarrassed titles. No title to the land under water would follow such changes of right to the upland, but a mere possibility, only available in case the City Corporation undertook to alienate the former, and to he protected by proceedings to annul the prohibited grants. There is nothing to prevent a repeal by the Legislature of the proviso in reference to grants by the City Corporation of lands under the statute of 1807, so as to leave the latter free to grant them to whomsoever they please. It is a mere restraint of alienation which can he waived by the original grantors, the State ; and is possibly valid because limited to particular grantees. If the State had intended to carry out a settled plan or policy to favor riparian owners in the grant of adjacent lands under water, to be carried out by a municipal corporation within whose jurisdiction • they might lie, they would have vested some right or definite interest in such ripa.rian owners, and not merely have reserved a well known common law right to‘ themselves, to divest the grantees of such lands from such Corporation of their right, by legal proceedings. It would be dangerous, therefore, to conclude that because the Legislature has shown some inclination to favor adjacent riparian owners, they necessarily must have conferred on them a legal right.
No case has been pointed out to me, nor have I been able to find any, in which the reservation by a grantor, whether a public body or an individual, of the right of annulling a grant by his grantor of lands, in case the latter did not give a preference to certain designated persons, could be recognized in a court of law at the instance of such preferred persons. Definite rights or even good will in the pre-emption of lands given to such pre *90 ferred persons are so cognizable (Armour v. Alexander, 10 Paige, 571; Craig v. Tappin, 2 Sandf. Ch., 78; Lytle v. The State of Arkansas, 9 How. S. Ct., 314); but not in • ease of a mere reservation to a grantor. The State clearly lias a right to reenter for breach of the proviso, and hold, as it orig- . inally held, the lands so reentered upon: and the upland owner could have no right as against it. I am satisfied thus far, that none of those under whom the plaintiff claimed derived any title to the lands in question from their riparian ownership of adjacent lands, cognizable in a Court: that for the breach of . the proviso in the Statute, the State only could reenter, until which time no grant by the City Corporation could by virtue of anything contained in the Statute of 1807 be annulled in a collateral inquiry. It is not necessary to recur to the mischievous consequences of giving a different effect to such statute in regard to land in the Gty of Hew York of great value, with intricate and confused titles, including the unavoidable retardations of the objects proposed to be gained by such statute as therein recited, preferring to rely on its plain provisions, and technical reservation of a well known right which would enable the State to carry out what policy it pleased.
The Corporation of the City of Hew York having thus an absolute right to make an unconditional grant of the lands under water, granted to them under the statute of 1807 before mentioned, defeasible only by action of the State; the next question that arises is whether the grant which they made to the heirs of Mrs. Clarke (which is conceded to be conditional), was subject to a precedent or a subsequent condition. It is true, in regard to both subsequent and precedent conditions, that while no formal words are necessary to create them, there are no technical words of such strength in expressing a condition to be either, that will prevent a manifest intention, áppearing on the face of the instrument to the contrary, from causing it to be construed as the other. ' But that is a principle prevailing in regard to every estate, interest or defeasance created by deed ; and such must be deemed to be the extent of the language used in such cases as Nicoll v. N. Y. & Erie R. R. Co. (12 N. Y. [2 Kern.], 121). Heither kinds are favorites with the law; but if there be any difference in that respect, precedent ones are least so (Craig v. Wells, 11 N. Y. [1 Kern.], 315), because they prevent anything from passing by a deed. Hothing can dispense with their' perform *91 anee except what may amount to a new grant (4 Kent Com., 125; 2 Black. Com., 154), while a condition subsequent may be waived or released (1 Washb. on Real Pr., 446).
The usual form of a condition precedent- is to convey the land upon condition, either that the grantee do or abstain from doing something, or that something has happened or failed to happen, "before the vesting of the estate, without any additional words of forfeiture, right of entry, or declaration that the instrument shall be void on the occurrence of the event which forms the condition, which additional words are not necessary (1 Shep. Touch., 121, et seq.) The form of a condition subsequent is that the estate shall be divested, cease, be annulled, or some equivalent expression, and that a right of re-entry shall arise, on the happening of the event constituting such condition. The main question to be determined in regard to the construction of all conditions, is whether the vesting of the estate granted by the instrument containing them is postponed until the happening of the contingent event forming the condition, or is. to be divested by it. If ■ anything, therefore, is required by such instrument to be done by the grantee in it, involving the possession of an estate by him, or a right of possession, it would go far to determine the character of the condition. The nature of the event or contingency forming the condition, the time required for the occurrence, as well as its adaptability to either following or preceding the vesting of the estate, may be considered in determining the nature of'the condition (Underhill v. Saratoga R. R. Co., 20 Barb., 455; Armstrong v. Carson, 2 Dall., 317; Nicoll v. Erie R. R. Co., [ubi sup.); and Finlay v. King’s Lessee, 3 Pet. S. Ct., 346).
In this case the grant to the heirs of Mrs. Clarke was a bipartite indenture, to which the Corporation of New York was party of the first part, ■ and such heirs by name parties of the second part. The consideration of it, as expressed in it, was the payment and performance, by the grantee, of the rents and covenants therein mentioned.' The rent was a certain annual sum of money, without rebate for taxes. For any arrears in the payment of such rent, the City Corporation was to have a right to distrain and re-enter. Besides the covenant to pay rent, one of the other covenants of the grantees, who also executed such grant, was, that they would build bulkheads and fill up roads thirty feet wide over such premises, to become public streets; and keep them in repair; which was followed by a clause of re *92 entry in case of failure to do so within a certain time. It also contained a covenant by the grantors to permit the grantees to collect wharfage from such premises, except from the end of the streets. This was followed by a clause which declared as follows, viz.—that it was expressly understood and agreed, and those presents and the estate thereby granted, ■ were upon the express condition, that if at any time thereafter it should appear either that the grantees were not at the date of those presents, seized of an absolute and indefeasible estate of inheritance in fee simple in the .premises on the easterly line of high-water, and adjoining the land conveyed by such grant, or if they should make any default in. the performance of any of the covenants, then those presents and everything therein contained should be null and void; the grantors and their successors might forthwith enter upon the premises thereby granted, and should thereafter be seized of the premises, discharged of any claim of the grantees.
It is not possible by any forced construction, however ingenious, to make the two conditions contained in such a clause, so differ in their character, that while the non-performance of the second condition in relation,to covenants should be entirely subsequent, the first should be precedent to the vesting of the estate ; such a construction would make the word “ then” not refer at all to that first condition, while it would render all the subsequent clauses of annulling the deed, right of re-entry, and re-seizing inapplicable and unnecessary to cutting off the grantees from any rights so far as such first conditions was concerned. It is very clear that the second condition was a subsequent one, because it consisted of doing something, which might require a period of time in which to be completed, and the payment of a perpetual rent. The clause of re-entry and re-seizin is conclusive upon the question of an intent that an estate should vest, since otherwise they would be wholly unnecessary (Rogan v. Walker, 1 Wisc., 133; Phelps v. Chesson, 12 Ired. L., 199). As, the two conditions, with the clause, which details the consequences of their happening, cannot be separated in character, the first must be a condition subsequent as well as the second.
But the words used expressly make the first condition point not to an existing state of facts alone, but to something future: They are, “ If at any time hereafter, it shall appear that the grantees were not at,” &c. Such « phrase - —■'-V- r-.-.. *93 ■ ward to a future occurrence, to wit, the time of such appearance, and considers him as looking hack to the date of the deed, by the past tense (“ were”) instead of the present. I do not well understand by what process of reasoning such words can be disregarded, or their force explained away, unless on the theory presently to be noticed and already alluded to that such grant or conditions subsequent being illegal, it is to be presumed that the condition could not be construed to be anything but precedent, whatever words were employed.
If we are at liberty to look at the whole scope and object of the deed in order to throw light upon the character of the condition, they plainly show an intent, on the part of the grantees, to acquiesce in that intent. The former covenanted to fill the whole premises with earth, so as to rise above the water, and surrender part of that so filled up for public use. Was it intended thereby, that the supposed owners of the upland should lie by and seize on the fruits of their labor and expenditure, without compensation, leaving the grantees liable for the rent, which was part of the consideration for the conveyance. This would have been the extreme of folly on the part of the grantees. As it was the interest and duty of the grantors, under the grant to them- of the State, to have such covenants performed, they agreed if they were performed by others to allow them at least to reap the benefit of such performance, until some other person should make his prior right appear.
The argument against holding such condition to be subsequent, seems to consist of the following propositions. First, That the corporation could not lawfully convey the premises to any one but riparian owners, unless the latter renounced their preemptive rights. Second, That not being owners with full powers of alienation to all persons whatsoever, they were not the only persons interested in the condition in question, or designed to be protected by it. Third, That the riparian owners are consequently not to be considered as strangers to such grant, but as having a legal right which it protects. And therefore the Clarke grant should be construed in reference to such duty of the corporation to such riparian owners. The whole of this argument evidently turns on the assumption, that the act of the Legislature of 1807, and the grant in pursuance thereof by the Commissioners of the Land Office by forbidding the alienation of the lands thereby granted to any one except the riparian owners without the re *94 nunciation by tbe latter of such right, conferred on such owners. vested legal rights, to be protected by, and capable of being enforced against the Corporation, and must stand or fall with it. What I have already said on that point suffices to dispose of that assumption.
But it is said, that as the character of' a condition depends, • not on any form of words, but the intention of the parties, and as the Corporation under the rules of construction already alluded to must be presumed to have intended to exercise only its legitimate authority and to .protect those whom it was its . duty to protect, viz.: ‘’the riparian owners, the condition in question must, if possible, be interpreted" as a condition precedent. It is further contended that the clause immediately preceding such condition by which the meaning and intent of such grant was declared to be, that it should “ not be construed to operate further than to pass the title or interest they have or might claim by virtue of their charters and various acts of the Legislature of this State” with the language of the conditions' itself, which follows it shows a purpose not to interfere with or prejudice any preemptive rights. If that were so it is singular that no more distinct announcements of such purpose had been adopted. But in fact the purpose of such preceding clause appears to have been merely for abundant caution, to avoid all responsibility for the title, and not to protect the right of a riparian owner who is not mentioned, which if it existed could not be taken away .against his consent. That right would prevail, if at all, with much greater force against the grantees than the grantors; and would not rely, for protection, upon a condition which would merely revest the title in the grantors, and leave the riparian owners to 'enforce their right as they best might. As to any indication of purpose in the language of the condition itself, that is best shown by its legal effect, which could only be, in any case, to divest the grantees of their rights, but not give to the' owner of the preemptive-right any additional power. In addition to the positive and express language contained in such clause and condition therefore, I cannot perceive a clear purpose to do anything exrcept what they- effect, to wit: to protect the grantors against any liability, and reserve a right to re-enter upon the determination of such ^condition. Ro court is at liberty to overlook the natural meaning of language used by the parties, in the instru- ■ ment adopted by them to effectuate their intention, for th.e pur *95 pose of so modifying it as to comport with a supposed matter of policy or even duty.
This leads me to the third proposition already referred to as one of the foundations of the plaintiff’s right to recover, to wit: that tlie grant by the Corporation, to the parties through whom the plaintiff claims, enabled him to recover against the defendants without the aid of any proceedings taken'by the Corporation . itself. In a lease for years, it depends upon the question whether the estate was made absolutely to terminate on the determination of a condition subsequent contained in it, or only a right of re-entry was given, as in the former case it would cease at once (Parmelee v. Oswego and Syracuse R. R. Co., 6 N.Y., [2 Seld.], 74; S. C., 7 Barb., 599; Stuyvesant v. Davis, 9 Paige, 427). In regard to a conveyance in -fee, however, the happening of a condition subsequent would not absolutely revest the title in the grantor. Upon its determination, the interest of the grantor and his representatives becomes a mere possibility of reverter, incapable .of being assigned (Nicoll v. N. Y. and Erie R. R. Co., [ubi sup.]; Phoanix v. Commrs. of Emigration, 12 How. Pr., 1). Of course if the condition in question be subsequent, the present plaintiff cannot take advantage of it.
The very result last mentioned is sought to be availed of to fortify the argument already alluded to, founded on a supposed duty and intention of the corporation in the reservations in the Clarke grant; as establishing that it could not have been intended to be brought about. But- without some grant under which the riparian owners could claim, they were powerless to overthrow the Clarke grant, and they ■ certainly derived no new powers from it or anything contained in it. The fact that they are now in a position to claim some rights if the Clarke grant is held for naught, by virtue of a grant from the grantors of it, gives color to the. idea that they must have been the persons intended to have the benefit of the condition in question, but that -alone could not, in law, give them a positive right to avail themselves of such a reservation when not mentioned therein.
If any argument-is to be drawn in favor of either view of the Statute of 1807, or of the terms of the Clarke grant, on the ground of inconvenience in the former case or great injustice in the latter, it is in favor of the present defendants. If the statute is regarded as a grant of a right to riparian owners, -cognizable in a comí' of law, and no grant could be made by the Cor *96 poration until it was ascertained who those owners were, or if every, grantee from them took his grant subject to the risk of a mistake by them, it is very evident that the progress of filling up and making streets, which is declared to be the object of such •statute would be very slow. The Corporation is not endowed with any means of determining the ownership of the upland? and it is a matter of every day experience that slight matters, not easily noticeable or discoverable, may subvert a title. In the meantime the interests of the city of Kew York must suffer from the delay, unless the Corporation itself should enter upon the enormous expense of filling up á large space of land ón its borders under water. If the Legislature had intended the riparian owners according to their interest to acquire forthwith a right to the land under water they would have granted it to them directly. But their legislation was conducted in such form as to reserve to themselves control over the grant in case it was not made to the right person. It was not to be supposed that after a grantee of the Corporation had expended immense sums of money in filling up land under water, under a pardonable mistake of ownership, they would be so unjust as to wrest the fruits of their labor and expenditure from them for the benefit of any one who might turn out to be technically the true owners, although they never asserted their rights, but lay by and saw the improvement advancing without notice or remonstrance. If the Clarke grant be construed to invest no estate, unless the grantees were at the time,, upon a critical examination, owners of the upland, it would be a snare for the grantees to induce them, in the expectation of acquiring title, to incur a great expense and become liable for the payment of rent, when the Corporation of the city could at any' time, without notice to them, make a new grant to a newly-discovered owner for a price commensurate with the enhanced value of the lands. It would work injustice to the grantees, therefore, if the condition in it was to be construed as being precedent and not subsequent to the vesting of the estate, so thereby as to take away all opportunity for at least remonstrance against the injustice of taking away the land.
Unless therefore, the statute of 1807 is to be construed as not merely indicating a policy on the part of the State, but also, as also conferring indefeasible vested rights on the' owners of all the upland adjoining the land directed by that statute to be *97 conveyed, or it so far carries out such policy as to convert the Corporation of Hew York into trustees, which would equally make such riparian rights vested, and the grant in question whatever its language may be, is to be construed simply as a means to preserve, or at least as not interfering with such rights, the defendants are entitled to judgment in them favor. For the reasons already assigned, I cannot consider either view sound or supported by anything contained in the statute or the grant.
I do not very clearly see how any question of adverse possession can properly arise in this case. Both parties claim title under grants from the same sources, and that title must be confined to the legal effect of such grants. Possibly a question of the waiver or release of the condition in the grant to the Corporation by the State, or by the Corporation in its grant to Mrs. Clarke’s heirs, might arise by their neglect for so long a time to enforce it, while at the same time they allowed parties innocently, and in good faith, to incur expense in making land above water under the mistaken belief that they were owners. It could hardly be the law that long after the riparian owners had lost their right to the upland by adverse possession, grantees of the low land could be dispossessed by proving that they had not been owners of the former at the time of the grant.
I think, therefore, upon the grounds that the Corporation of the City could make the grant it did to the heirs of Mrs. Clarke subject only to be divested by State action, and that such Corporation could not convey any rights of entry for any determination of the condition of such grant, the plaintiff was not entitled to recover, and the defendants are entitled to a new trial on the usual terms.
The judgment should therefore be reversed, with costs to abide the event, and a new trial had.
Bosworth, C. J.
The record of the judgment in Towle v. Farney was received in evidence against the objection and exception of the defendants. It was not objected to as incompetent, or as not being the best evidence of any fact which it was introduced to prove, but was objected to “as irrelevant.”
The jury were instructed that in determining whether Towle had title to lots Hos. 117 and 118, they must decide that ques *98 tion “ irrespective of any decree or judgment in the case of Towle v. Farney ;" that the plaintiff “ must prove his title, in this suit, to the lots Nos. 117 and 118, precisely as he was required to do in that case or, in other words, that the record in Towle v. Farney was not any evidence in this suit, and as against the present defendants of the plaintiff’s title to those lots.
That record proves the fact of the recovery of a judgment establishing the plaintiff’s right to the possession of lot Eo. 118, in a suit against a person in actual possession of it. The further evidence that, in execution of that judgment, the plaintiff was put in possession of this lot on the 25th of October, 1856, establishes the further fact that he was in actual possession of this lot, by the judgment of a competent court, over three years before the making of the water grant to him of the date of Eovember 29, 1859.
The record proved the fact of recovery of possession by the plaintiff, in an action commenced in December, 1849, against the persons in actual possession of lot Eo. 118, and determined his right to it and his pre-emptive right to the water grant as against them. And the verdict of the jury in this action determines his right to it and his pre-emptive right to the water grant, as against these defendants.
I think it was competent, for any purpose for which it can be seen it was introduced; and if it was competent for any purpose, the exception is clearly untenable.
But if, on any principle, it can be said that it was an irrelevant or immaterial fact that he recovered possession by such a judgment (which we do not concede,) then it is quite clear that the introduction of it could not possibly have prejudiced the present defendants, upon any question submitted to the jury.
The observations respecting this record, are applicable to the introduction of the record in the case of Towle v. Cortlandt Wood, and the exception taken to the admission of the latter.
The exception to the charge, in respect to the question of adverse possession by the defendants, is untenable. The charge was, that if the defendants and those under whom they claim, took possession of the premises in question under the grant made to them in 1837, “ by commencing to fill up the land immediately, * * * and have been in that possession *99 from, the 27th of February, 1840,” the defendants were entitled to a verdict.
“ But if they commenced to fill np in 1837, and ceased or abandoned the work, then that possession would not be such as the law requires to give them title by reason of holding adverse possession.”
The point of this branch of the charge is, that in respect to a possession alleged to consist of occupation, in filling up the premises, it ceases when the process of filling in ceases and the work of filling i/n is abandoned. In this there is no error.
The words " and ceased or abandoned the work,” clearly mean a total cessation of the work and an absolute cessation of that kind of occupation of the lot of which the Judge speaks in this part of his charge.
All other of the exceptions to the charge are disposed of by numerous decisions in the Court of last resort, save the exception to so much of the charge as states that the grant of the premises in question, of the date of the 31st of March, 1837, to the heirs of Mary Clarke was void, and vested no estate in them if they were not then the legal owners of the lots Nos. 117 and 118.
The grant itself declares that it is made “upon this express condition, that if at any time hereafter it shall appear that the said parties of the second part (such grantees) were not, at the date of these presents, seized of a good, sure, absolute and indefeasable estate of inheritance in fee simple, of, in and to the lands and premises on the easterly side of the line of high water, and adjoining to the water lot and ground under water hereby conveyed or intended so to be, * * * then * * * these presents, and every article, clause and thing herein contained, shall be absolutely null and void.”
They were not then, have not been since then, and are not now, the owners of the lots Nos. 117 and 118, nor had they then any interest or estate therein. But the title to them was then in this plaintiff’s grantors.
A grant of the premises in question was made to the plaintiff, as owner (he then being the owner and in actual possession) of lots 117 and 118, on the 29th of November, 1859 ; and if the grant to the heirs of Mary Clarke shall have no greater effect given to it than the grant itself declares shall be given to *100 it, then it is no obstacle to a recovery by the plaintiff in this action.
Assuming the verdict in this action to have been rendered upon competent evidence, and that all the exceptions taken by the defendants, saving the one now under consideration, are untenable, it would seem to follow that the plaintiff’s right to recover the premises in question is as perfect and absolute (looking only to the substantial rights of the parties) as it would be if the grant to the heirs of Mary Clarke did not embrace the premises subsequently granted to the plaintiff by the grant of November 29, 1859.
The Corporation, in making grant of land under water, covering and contiguous to the premises in question, conveyed by lines running easterly and westerly parallel with 25th and 26th Streets. This is true of all grants given in evidence. The Corporation may properly so grant, and the owners of the upland cannot object thereto (Nott v. Thayer, 2 Bosw., 10).
It may be true that the Corporation is the owner of the land between 25th and 26th Streets, on the Hudson Biver, between high and low water mark, and as such, might have given title thereto to any one purchasing prior to the Act of February 25th, 1826, and perhaps subsequently thereto (Furman v. The Mayor, &c., 5 Sandf., 16; S. C., 6 Seld., 567); and yet it will not follow that the owners of the upland are not absolutely entitled to a pre-emptive right to a grant of the land under water to which that Act relates, to the exclusion of the Corportion or of its grantee of the land between high and low water mark, where such a grant had been or is about to be made.
That statute directs the commissioners of the land office to issue letters patent granting to the Mayor, &c., the lands under water, “ at and from low water mark, and running four hundred feet into the said river” (the Hudson Biver) “ from a point on the easterly shore of said river, four miles north from Bestaver’s Killetje, * * * to Spuyten Duyvel’s Creek,” (Davies' Laws of N. Y., 675, 676) and impresses upon, and subjects the letters patent and the grant thereby, to the provision, “ that the proprietor or proprietors of the lands adjacent, shall have the pre-emptive right, in all grants made by the Corporation of the said city, of any lands under water, granted to the said Corporation by this Act.”
*101 It is the obvious purpose of this statute, to secure to owners of the upland, to the exclusion of the Corporation as owner of the space between high and low water mark, a pre-emption right to the lands under water to which that act relates, in the event of the Corporation making grants of the same.
The Act of April 3, 1807 (Davies’ Laws of N. Y., 434, § 15), impresses the same condition and right upon all the lands under water to which that Act relates, and that covers the space between Bestaver’s Killetje and a point four miles north thereof, and between low water mark and a line extending four hundred feet into the Hudson River.
The Act of April 12,1837 (Davies’ Laws, 799), vests in the Mayor, &c., of New York, title to the lands in the Hudson River, between Hammond and 135th Streets, extending westerly from the line of the former grants, to the westerly side of 13 th Avenue, as regulated by that Act. That Act gives to the proprietors of grants theretofore made by the Corporation, of lands within the four hundred feet, the pre-emptive right in all grants, of any lands under water, granted to the Corporation by the Act of April 12, 1837, “ adjacent to and in front of the lands under water so heretofore grantedand it also secures to “ the proprietors of lands having a pre-emptive right to grants of lands under water by virtue of the said Act,” (of February 25, 1826), “ the same pre-emptive right in all grants made by the said Mayor, Aldermen and Commonalty of the City of New York, of any lands under water granted to them by this Act, (viz., the Act of April 12, 1837).
The obvious meaning of these statutes is, that all the lands under water embraced within the grants authorized by them, shall be granted (if any grants be made thereof) to the proprietor or proprietors of the land adjacentthat is, to the proprietors of the adjacent uplands, and not be vested indefensibly in the Corporation as owners of the land between high and low water mark where it had made no conveyance of the same, or in its grantees of such tide way where it had granted the same to persons not proprietors of the adjacent uplands, if any such grants had been made.
It could not have been the intent, nor, is it an equitable or necessary construction of the Act of April, 12, 1837, to require a grant of the land under water conveyed by this Act to any person who might, by misrepresentation in regard to his *102 title to adjacent upland, or by reason of the mistake of the Corporation in that behalf, have obtained," prior to April 12, 1837, a grant of land under water to the outer line of the four hundred feet first granted.
The phrase, “ the proprietor or proprietors of the adjacent lands,” is found in the Act of May 5th, 1786, (1 Vol. Laws of N. Y., Greenleaf’s Ed., 284, § 18) and in the Act of April 6,1813, (1 R. S., 293,§ 14). While in 1 R. S., 208, § 77, (Sec. 67) the more brief expression, “ the proprietor of the adjacent lands,” is employed. In all of these statutes, and in those of April 3, 1807; February 25, 1826, and April 12, 1837, which use the words “ the proprietor or proprietors of the land adjacent,” the proprietors spoken of are the persons owning the upland adjacent.
The Revised Statutes (1 R. S., 208, supra), not only prohibit the making of a grant “ to any person other than the proprietor of the adjacent lands,” but declares that every such grant that shall be made to any other person shall be void. This provision of the Revised Statutes was, perhaps, enacted to save the necessity of bringing a scire facias, or proceedings by bill in chancery, or by information, where a second patentee found that by mistake or misrepresentation a prior patent had been issued to one not entitled to it, in order to procure it to be vacated (Jackson v. Lawton, 10 Johns., 23; Jackson v. Hart, 12 Johns., 77).
The decisions in these two cases proceed on the principle that letters patent are matters of record, and cannot be impeached collaterally. The Courts say that “ unless letters patent are absolutely void on the face of them, or the issuing of them was without authority or was prohibited by statute, they can only be avoided in a regular course of pleading, in which the fraud, irregularity or mistake, is directly put in issue” (10 Johns., 26 ; The People, &c. v. Mauran, 5 Den., 389; Williams v. Sheldon, 10 Wend., 654, and Jackson v. Marsh, 6 Cow., 281, were decided on that principle).
The water grants made by the Corporation of the city of Hew York, are not “matters of record” in any such sense as letters patent, issued by the State, are. The grant containing the condition in question, is by an ordinary deed of conveyance.
The object of the declaration in the water grant, that “ these presents and the estate hereby granted, are upon this express condition,” ***** that “ these presents and every article, *103 clause, and thing herein contained .shall be absolutely null and void,” if it shall at any time appear that the grantees were not the proprietors of the adjoining land on the easterly line of high water mark, was probably the same as that of the clause of the Revised Statutes, which declares that a patent issued to a person not entitled to it, shall be void.
The object and design were, that the actual owner of the adjacent land who had obtained a second water grant, might, in the suit in which he established his title to the adjacent upland, and consequently to such a grant, recover from a prior grantee of the land under water, whose grant, by its own terms, was absolutely void, without instituting a suit for the single and sole purpose of avoiding such prior grant.
No cases have been cited which require the Court to give to the water grant made to the heirs of Mary Clarke any force and effect; as the grant itself declares, that on the facts appearing which are established on this trial, it shall be absolutely null and void.
I conclude, therefore, that if there be no obstacle to the plaintiff’s recovery except the fact of this prior grant, the judgment should be affirmed.
The fact that the water grant also declares that it shall be null and void, for the further cause that the grantees make default in the performance of any of the covenants on their part therein contained, and the parties of the first part may forthwith enter upon the premises, and shall thereafter be seized of the same, discharged of any claim of the grantees, does not militate against this view.
It would be just, and but a proper precaution, to provide for the right of re-entry in case of a failure by them to perform their covenants.
The Corporation thereby resumed the power, in case the grantees had, by mistake, obtained a grant, when the right to it. was in others, to repossess itself of the granted property, and thus be in a condition to perforin its duty to the owner of the adjacent upland, and prevent his right being barred by adverse possession, if perchance it could be thus barred.
It is only on the ground that the heirs of Mary Clarke were supposed to be, “ seized of a good, sure, absolute and indefeasible estate of inheritance in fee simple of, in, and to the lands and premises on the easterly line of high water and adjoining *104 to the water lot and ground under water,” conveyed by the grant of the 31st of March, 1837, that such grant was made. It declares that it was made and granted upon the expressed condition that it should “ be absolutely null and void” if it should appear that they were not so seized.
Instead of their being so seized, the plaintiff’s grantors had such title. The plaintiff was litigating the question of title to the adjacent uplands from December, 1849, to the 25th of October, 1856, with the tenants of the heirs of Mary Clarke, who were in actual possession ; and having established his title, as azainst them, a water grant of land under water, parallel with 25th Street, and of even width with his adjacent upland, was made to him on the 29th of Hovember, J859.
He had done nothing to waive or forfeit his pre-emptive right to such grant. At all events, there is no evidence tending to show that such is the fact.
The premises in question are part of the land under water, conveyed by said grant.
His pre-emptive right is absolute. He is the proprietor of the adjacent upland, and as such proprietor has a water grant of the premises in question, and there is no obstacle to his recovery in this suit except the prior grant to the heirs of Mary Clarke, and that, by its own terms, is declared to be absolutely null and void on the fact appearing which has been established on this trial.
This pre-enqstive right is so definite and absolute, that Courts will protect it (Armour v. Alexander, 10 Paige, 571; Furman v. The Mayor, &c., 5 Sandf., 16).
The remarks of the Court in Lytle v. The State of Arkansas, (9 How. S. Ct., 314,) in relation to the character and quality of the pre-emptive right asserted in that case, are equally pertinent to the pre-emptive right in question. The Court say: “ The claim of a pre-emption is not that shadowy right which, by some, it is considered to be. Until sanctioned by law, it has no existence as a substantive right. But when conveyed by the law, it becomes a legal right, subject to be defeated only by a failure to perform the conditions annexed to it.” The considerations of public policy which led to the creation of the pre-emptive rights there under consideration, are not the same as those which led to securing in the case before us, by positive statute, “?the pre-emptive right in all grants made by the Corporation *105 of the said City, (New York,) of any lands under water, granted to the said Corporation by this Act,” (the Act of February 25th, 1826,) to “the proprietor or proprietors of the lands adjacent.” But the latter Act is founded in obvious considerations of public justice and the equities of the individuals owning the lands adjacent.
The words of the statute declaring and perfecting these rights, are as clear and peremptory as can well be selected.
It was not intended that the Corporation should have tire power and authority, if it made grants of these lands, to make them to any one except the proprietors of the lands adjacent, unless the latter did some act or were guilty of some omission which would defeat the pre-emptive right thus declared.
And every person taking a grant, either as original grantee or assignee, takes it with notice of the right of the true proprietor of the lands adjacent (Brush v. Ware, 15 Pet. S. Ct., 93.)
These views will aid in properly determining the question, whether the condition in question contained in the grant of the 31st of March, 1837, shall be deemed a condition precedent or subsequent.
There are many cogent considerations why the condition in question should be treated as a condition precedent, and not as a condition subsequent, with all the consequences attaching to the application of the technical rules of that branch of the law, to this case.
First. It is held, and acted on as a basis of judicial decision, that there are no technical words by which a condition precedent can be distinguished from a condition subsequent. That whether it be the one or the other is a matter of construction, and depends upon the intention of the party creating the estate (Nicoll v N. Y. & Erie R. R. Co., 12 N. Y. [2 Kern.] 121). That conditions subsequent are not favored in the law, and can only be reserved for the benefit of the grantor and his heirs, and no other can take advantage of a breach of them. (Id., 131.) That where a fee simple, without a reservation of rents, is granted upon a condition subsequent, there is no estate remaining in the grantor; there is simply a possibility of reverter. That this is not an estate, but a bare possibility, which will not in equity even give an assignee of it a right to the interposition of a Court *106 of Equity, to divest an estate for the breach of a condition subsequent. (Id., 132.)
Second. The Corporation had not capacity to grant, lawfully, in fee simple, absolute, the premises in question, to any persons except the owners of the adjacent upland, unless they had done some act to waive or dispose of their pre-emptive right to the grant. If about to make a grant to persons not entitled, the Corporation would be restrained by injunction, at the suit of those having the pre-emptive right, provided the latter offered to take a grant on terms as favorable to the Corporation. So, too, if the Corporation should make a grant to persons not entitled, a suit might be brought by those entitled, against the grantees and such Corporation, to avoid the grant, and compel a grant to the plaintiffs. The reasoning of the Court in Furman v. The Mayor, &c., 5 Sandf., 16, and Armour v. Alexander, 10 Paige, 571, fully supports these views.
The Corporation was not, therefore, the owner of the premises granted, in fee simple, absolute. They held them in trust, in such sense that, if they determined to grant them, the owners of the adjacent uplands would be entitled to the grant if. they desired it, and would take it on terms as favorable to the Corporation as others would.
Hot being owners in fee simple, absolute, they and their successors are not alone interested in the condition in question, noi; are they the only persons, or in fact the persons who should be deemed to have been designed to be protected by it.
Third. Hot being a condition which can be deemed to have been inserted as a reservation for the benefit of the “grantor and his heirs,” alone or primarily; the plaintiff and his grantors of the adjacent upland, are not to be regarded as strangers, having no interest except that of a possibility of reverter. They had a pre-emptive right to the grant, which was a perfect, legal right, and have done nothing, nor omitted to do anything, to waive or forfeit that right.
Fourth. By 1 R. S., 747, § 23, the assignees of the lessor of any demise, have the same remedy “ by entry, action, distress or otherwise, for non-performamce of any agreement contained in the lease so assigned, * * * or for the doing of any waste or other cause of forfeiture as their grantor or lessor had or might have had, if such reversion had remained in such lessor or grantor.” And by § 25 (Id.), the provision of that section ex *107 tends “ as well to grants or leases in fee reserving rents, as to leases for life and for years.”
The .water grant to the defendant’s grantors, of the thirty-first of March, 1837, should he construed in view of the position of the Corporation to the premises in question, of its duty to owners of the adjacent upland, and of the right of the latter.
The grant, before reaching the condition in question, provides that in case of failure to pay the yearly rents reserved, for the space of thirty days after any rent becomes due, the Corporation may re-enter, &c. Next following this provision, are other covenants, occupying some eight folios, and then come these clauses, viz.: “And it is hereby further covenanted and agreed, by and between the parties to these presents, and the true intent and meaning is hereby declared to be, that this present grant shall not be deemed', construed or taken * * * to operate further than to pass the estate, right, title or interest they have or may lawfully claim by virtue of their several charters and the various Acts of the legislature of the People of the State of Pew York ; and it is further expressly understood and agreed, and these presents and estate hereby granted, are upon this express condition, that if at any time hereafter it shall appear that the said parties of the second part, were not, at the date of these presents, seized of a good, sure, absolute and indefeasable estate of inheritance, in fee simple of, in and to the lands and premises on the easterly side of the line of high water mark and adjoining to the water lot and ground under water hereby conveyed, * * then * * these presents, and every article, clause and thing herein contained, shall be absolutely n/ull and void?
These provisions indicate a" clear intent not to make any grant which could in any way interfere with the pre-emptive right of the true owner of the adjacent upland to a water grant. It is a clear declaration of an intent not to transfer, or to be deemed to have attempted to transfer any estate in the premises purporting to be conveyed, unless the grantees were at that time absolute owners, in fee simple, of the adjacent upland.
All the covenants in this grant, on the part of the grantees were no more or less valuable to the Corporation, whether the grantees were or were not such owners. And that condition was manifestly inserted, not for the benefit of the Corporation, the grantor, but for the benefit of the actual owners of the adjacent upland, and that the grant might not be an obstacle to making *108 an operative, valid grant to such true owners, whenever it appeared that the grantees were not the true owners.
In any other view it is puerile. The Corporation had no pecuniary or proprietary interest to he protected by it. But it owed a duty to the true owner of the adjacent upland, whoever he might be, and that duty it designed to perform faithMLy.
Treated as a condition subsequent, there is no act or duty devolved upon or stipulated for by the grantees; the non-performance or non-observcmce of which is to be a cause of forfeiture.
There is no event to happen in futuro, the happening of which is to be a cause of forfeiture.
The good sense of the condition is, that if the grantees do not then own the adjacent upland, they take no estate • and whenever it appears they were not the owners, the Corporation is at liberty to say that the water grant, the instrument itself, and all its provisions, were “ absolutely null and void ” from its date.
It did appear satisfactorily to the Corporation on the 27th of October, 1859, and such was the actual fact, that the heirs of Mary Clarke were not the owners of the adjacent upland, and that this plaintiff was; and in a water grant of that date, the Corporation granted the premises to the plaintiff, as the person entitled to such grant, and.the grant recites these facts.
If the intent of the grantors, as clearly manifested by the grant itself, is to determine whether the condition is to be treated as precedent or subsequent, then it should be held a condition precedent.
It is a condition which they could not lawfully discharge -and release.
The conclusion is not weakened by the fact that the grant also declares that if the grantees make default in any of their covenants, the same consequences shall follow, and that the grantors and their successors may re-enter.
That provision is an apt and proper one to meet the case of a default on the part of the grantees to perform their covenants, and has full force in being applied to such a case. It would violate the clear intent, otherwise expressed, to hold that a reentry or its statutory substitute, was designed to be the only remedy left to the Corporation or the owners of the adjacent upland in case it was ascertained to be true in fact that the grantees did not own the adjacent upland.
*109 Nor does this view interpose any difficulties in the way of the Corporation, in extending the exterior hones of the city, and building new streets, piers, or bulkheads.
It can cut off the pre-emptive right of any adjacent upland owner, by giving notice of an intent to make water grants and inviting bidders. If he declines to take a grant on the condition that no estate passes if he be not the owner of the adjacent upland, and obtains one on such terms, he has no ground of complaint legal or equitable, because he has run the risk of making large outlays on the premises. It is a matter of judicial history that for more than forty years there has been a succession of suits between the devisees of Mary Clarke and purchasers claiming title under acts of the Legislature of this State, and proceedings thereunder, in respect to the title of lots belonging to the estate, which is the upland adjacent to the premises in question (Sinclair v. Jackson, 8 Cow., 543; Cochran v. Van Surlay, 20 Wend., 365; Towle v. Forney, 14 N. Y. [4 Kern.], 423; Williamson v. Berry, 8 How. S. Ct., 495; Williamson v. Suydam, 24 How. S. Ct., 427).
So far as the reported cases speak on the. subject, the devisees of Mary Clarke and those to whose rights the grantees in the grant of the 31st of March, 1837, have succeeded had been defeated. I do not, on this account, question the good faith of such grantees on applying for and obtaining that grant. Their good faith does not enter into the controversy.
But matters as notorious as it may be presumed the fact and result of these litigations were, from the history of them found in the reports of the different courts, might properly predispose the Corporation, in making the grant in question, to declare in it a clear intent, and insert in it a condition, that no estate should be transferred if the grantees were not at the date of the grant the owners of the upland.
I think the condition in question was inserted to declare and effectuate such an intent, and that this is apparent from the grant itself.
The grantees by virtue of their grant obtained a license to enter and enjoy the premises unmolested by the Corporation, so long as they perform the covenants on their part, and no one appeared claiming to be the true owner of the adjacent upland.
When such a claimant appeared, and was what he claimed *110 to be, the Corporation had the right and it was its duty to make a grant to him.
And where, in a suit properly brought by him to recover possession, he establishes his ownership of the adjacent upland, the grant in question should not be held to be an obstacle to . a recovery. The defendants are not in a position to claim that the grant to the heirs of Mary Clarke vested any title to the premises in question, in the grantees named in it.
Such a construction is adapted to subserve the ends of justice, and accords with the intent of the grantor in inserting the condition in question, as manifested by the grant itself, and all surrounding facts to which its recitals clearly point.
If the defendants had any equities based on the good fcdth and acts of the grantees in the grant of March 31, 1837, they could have been alleged and protected in this action (Phillips v. Gorham, 17 N. Y., 270).
The complaint in this action, in its third acticle, alleges that the defendants pretend to claim some right to the premises in question, that this claim is unlawful, and that defendants’ claim to the lot and-their possession thereof is fraudulent and void as against the plaintiff.
Without requiring any allegations of the complaint to be made more definite and certain, as provided by § 160 of the Code, the parties have tried the cause upon its whole merits, without any objection thereto that I have discovered, and unless the plaintiff must bring two suits instead of one, and try them separately, it would seem that his right to the premises in question has been fully established, and the judgment rendered should not be disturbed.
I have already considered the exceptions to that part of the charge relating to the question of adverse possession. In doing so, no doubt was suggested whether the case raised any such question for the consideration of the jury.
I think it by no means clear, that any such question can be raised in this case, and if it cannot be, the charge in that behalf is' immaterial, as the plaintiff recovered on proof of his title to the upland, and of his pre-emptive right to the water grant which has been executed to him.
By the terms of the grant in question, the grantees agreed that if they were not at its date the owners of the adjacent upland in fee simple absolute, the grant should be absolutely *111 null and void. They entered under a grant containing such an agreement on their part. ■ Their possession has been qualified by it, and subordinated to it.
It is not adverse to the Corporation in respect to the question of title to the premises granted. Their possession has been under the grant, with no claim of title which is not qualified by these provisions.
The defendants and their grantors have occupied under a grant which declares, and in which they agree that their occupation shall be deemed to be without title or right to claim any title, if the grantees were not, at the date of the grant, the owners of the adjacent upland. They were not such owners. Their occupation, therefore, has not been hostile or adverse either to the City Corporation or their quasi cestuis que trust, the actual owners of the adjacent upland.
Where it appears that the title claimed is subservient to, and admits the existence of a higher title, the possession is not adverse (Jackson v. Johnson, 5 Cow., 74). The claim of title on the part of the defendants and their grantors, is under and according to the grant. " By the very terms of the grant and the agreement in it qualifying the defendants’ possession, the Corporation might re-enter after the lapse of thirty years, as well as at the end of ten years, on its appearing, or proof being made, that the grantees in the grant of March 31, 1837, had no title then to the adjacent upland.
It is impossible that the possession can be deemed to be ad verse, in its commencement, to the Corporation, in such sense that twenty years’ continuance of it would defeat this condition of the grant and convert the defendants’ title into a fee. A possession, to be adverse, must be accompanied with a claim of the entire title, free from all conditions and limitations (Jackson v. Hill, 5 Wend., 532; Livingston v. Peru Iron Co., 9 Wend., 511; Thompson v. The Mayor, &c., 11 N. Y. [1 Kern.] 115 ; Hoyt v. Dillon, 19 Barb., 644; Butler v. Phelps, 17 Wend., 642; Burhans v. Van Zandt, 7 N. Y. [3 Seld.], 523).
If the condition in question was clearly intended by the grantor as a condition precedent, and if this is manifest from the terms of the grant and notorious surrounding circumstances, then it follows that the defendants took possession, and have at all times occupied under an agreement that they should not be *112 deemed to have acquired or have any title, if they did not own the upland. They did not then own, and have not since then owned the adjacent upland. I think, therefore, that their possession cannot be treated as adverse, within the rules applicable to that subject.
If these views are correct, the judgment should be affirmed. If they are untenable, it will follow that these pre-emptive rights specially protected as they are by statute, and notwithstanding the apparent effort of the Corporation to do nothing to prejudice or affect them, aré destitute of substance, and cannot be enjoyed as a matter of right by those to whom the law declares they belong.
I think the judgment should be affirmed.
Judgment reversed, with costs to abide the event, and a new trial ordered.