## Bard and Wenrich *versus* Yohn.

Where a person employed by one as a servant, is using the team of his master, for his own purposes and benefit, and in the absence of, and without any directions from the master, uses the team so negligently as to occasion injury to a third party, the master is not liable for such injury, although he assented to the servant using the team for his own benefit.

If one man loans or hires a horse to another, to be used exclusively for the purposes of the latter, the owner of the horse is in no wise responsible for the negligent manner in which the horse may be used.

To entitle a plaintiff to a verdict against several defendants as joint trespassers, it must appear that they acted in *concert* in committing the trespass for which the action is brought.

Where two or more commit separate trespasses, or do separate acts tending to produce injury to another, without any concert, there is no joint liability, and consequently there can be no joint recovery against them.

Where one person places a carriage upon one side of a street, and another without any concert with the former places a team of horses on the opposite side of the same street, and a person passing along is kicked by one of the

[Bard and Wenrich *v.* Yohn.]

horses, and thrown against the carriage on the other side and injured, both by the stroke and the fall against the carriage, he cannot recover jointly against the parties who placed the obstructions on the opposite sides of the street.

ERROR to the Common Pleas of *Berks county.*

This was an action on the case by William Yohn against Adam Bard and David Wenrich. Adam Bard, one of the defendants, resided in the city of Reading, and kept a public inn there. David Wenrich was a farmer, and resided about ten miles from Reading in the same county. Elijah Wenrich was a son of David Wenrich, and, though having a family of his own, resided with his father, as a hireling for wages. On the 26th October, 1853, an agricultural fair was being held at Reading. Elijah hitched up his father's team and carried several persons to Reading who were desirous of visiting the fair. These persons paid him the fare, and he kept it himself. When they arrived at Bard's tavern they found his stables and yards filled with horses and carriages, and on the part of the street adjacent to Bard's house, and on the same side of the street, there were one or two rows of carriages of his guests, placed there temporarily by Bard's servants. Young Wenrich drove his team to the opposite side of the street, and unhitched his horses and tied them to the tongue of the wagon, and fed them from a trough placed upon the tongue with feed which he had brought from home.

The carriages and vehicles placed upon one side of the street and Wenrich's wagon and horses upon the other, took up the greater portion of the street, and rendered the space between so narrow that carriages could not pass each other at that point. The horses were hitched to the trough by chains, which, it is alleged, were too long for that situation, and that when the horses stretched back they would reach nearly across to the carriages upon the other side of the street.

As Yohn, the plaintiff, was riding past, one of Wenrich's horses sprang back and gave him a violent kick, breaking his leg and throwing him off his horse against the hub of a carriage on the other side, placed there by Bard, which he struck with his hip, causing lameness, which it was alleged would be permanent.

Elijah Wenrich was examined as a witness on the trial of the case in the court below, and testified that he took the team without asking his father's permission, though he did not forbid him to take it, or express any disapprobation that he had done so afterwards. His father had allowed him to go to the fair on that day, but nothing was said about the team. The day's wages was deducted from his time by his father when they subsequently settled their accounts. He also stated that he was not a guest with the team in any manner at Bard's house, nor was he directed by him to put the wagon and horses in the street.

[Bard and Wenrich *v.* Yohn.]

The plaintiff submitted the following points:—

1. If the jury believe from the evidence, that Elijah Wenrich had permission from his father, David Wenrich, to take the team whenever he chose to do so, if it was not wanted to work, and that under that permission he took it or drove it to Reading, on the day that the plaintiff received the injury complained of, the said David Wenrich is answerable for said injury, if it occurred through carelessness or improper conduct on the part of Elijah Wenrich.

2. If the defendants placed and left any horses, wagons, or other vehicles in the public streets, obstructing the free passage of the same, they thereby violated the law, and are responsible to the plaintiff for any injury occasioned to him by said illegal act.

3. If the jury are satisfied, from the evidence, that the plaintiff was injured in consequence of the illegal or careless act of either one of the defendants alone, in that case he is separately liable, and if injured by the joint careless or illegal acts of the defendants, then both are liable to the plaintiff in damages.

4. If, as Elijah Wenrich, a witness for defendants, states, he has been in the employment of his father, working on the farm and driving the team, from the time he was 21 (several years before the accident occurred) up to the present time, at a stipulated yearly sum, the relation of master and servant existed between them, and was not dissolved by the fact that the father had given him one day free to attend the fair, and afterwards deducted one day's wages.

The court below (Jones, P. J.), after stating the facts, and explaining to what extent temporary impediments might, growing out of the necessity of business or travel, be placed upon streets or public thoroughfares, instructed the jury as follows:—

" The defendants are both here relying somewhat on the reasonable necessity of their acts.   Bard denies that Wenrich was his guest, and if he were not, then Bard is absolved from any liability growing out of that relation—and the evidence seems to establish that Wenrich was not putting up at Bard's tavern and was not his guest.   Take that to be so.

" Wenrich had unhitched and tied up his horses, on the east side of Third street—there was already a row of vehicles standing from opposite to where Wenrich put up his team, stretching to the south—that row was on the west side of Third street, and extending along the curbing and gutter at Bard's—those vehicles appear to have been placed there under the directions of Bard's servants. Doubtless there was room enough in the street before Wenrich came there with his team.   We hold that a tavernkeeper, on such an occasion as this was, may from necessity put vehicles of his guests in the streets—they are to be there but a few hours, and the impediment is temporary: he has, perhaps, a right to

[Bard and Wenrick *v.* Yohn.]

do this, as clear as he would have to obstruct the street with his coal or wood. But he must use ordinary care to guard against accident.

"Bard had first occupied the street in this way. His row of vehicles was placed on his side of Third street, when Wenrich came there. The street was already narrowed by the width of an ordinary carriage. You know how Wenrich's team was put up—narrowing the street still more. The horses were so tied that stretching back they are said to have reached almost across the carriageway.

"Bard, as we have said, was occupying the street from a necessity, growing out of his business as a taverner. The occupation of it by Wenrich, especially in the way he did occupy it—stabling his four horses at his wagon tongue, two towards the footwalk, and two towards what carriage way was left, and that on a day when so vast a concourse of people with their carriages and animals were crowding the streets of the town, is not to be justified on any ground of right or necessity. It is going to the farthest verge of the law, to say that any necessity could justify Bard in putting his guests' vehicles in the street, even for the few hours they were to remain there—nothing would justify him in putting their *horses* there had he done so, and nothing could justify any other persons. The people were not to be subjected, for the convenience of anybody, or of any class of men, or of any business, to running the gauntlet, as it were, along their own highways, through opposing rows of horses' heels. Economy may induce, or necessity may compel a man to camp out, but he must not make the highway his camping ground.

"When a highway is already partly occupied, as this was, the second comer must look well to leaving a free clear passage. Admit that he may, from extreme necessity, put his wagon there, leaving such passage—can he be said to leave a free clear passage, if he ties his horses to his wagon tongue so loosely that they may stretch nearly across the street, to an already existing impediment? Were these horses so tied? for if they were, it was an impediment which it was unlawful to place in the street.

"These defendants are not alleged to have brought this accident to Yohn about by any direct combination. They did not put their wagons opposite to each other in consequence of any understanding—but each acted for himself, independent of the other. The independent act of each contributed to the result, it is alleged.

"Was there an adequate space left for passing the street, after Wenrich put his wagon and horses there? If there was, was that space contracted by Bard or his servants, placing other vehicles there after Wenrich had put his wagon and horses on the west

[Bard and Wenrich *v.* Yohn.]

side of the street? If nothing of this kind was done by Bard or his servants, Bard should go free. If other vehicles were placed there by Bard or his servants, after Wenrich had put his there, that would be an act which, bringing the passage way to the narrowest limit, would involve Bard with Wenrich in responsibility for any injury that might result from their separate acts. Each acting for himself (though in a manner to conduce to the result, if they did so), becomes liable—and they may be sued, as here, jointly.

" Was the injury to Yohn in any respect a result, in whole or in part, of his own want of care and prudence, in riding through there at the time—or in riding upon such a horse as the defendants say he rode upon? It is true that Yohn lived in that very square and might have seen the condition of it—particularly when mounted on horseback. But it will be remembered that a cart was passing through, directly in front of him, and one might fairly enough think that he could pass safely through on horseback where a cart was passing or had passed. If you should find that Yohn's own want of care or prudence contributed to the injury, he cannot recover at your hands.

" You will observe that the defendant, Wenrich, was the owner, not the driver of the team on this occasion. He was not present, and personally had nothing whatever to do with its management. A question growing out of that is, whether Elijah Wenrich, who had the team in charge, was there with it, as the servant of his father, the owner of the team, or under a general permission to use it when not wanted for work.

" These are in fact two questions; the last one is raised by the first point of the plaintiff; the first by the fourth point. Where one permits another to take his wagon and horses, even though there is no compensation made for the use of them, the owner is answerable for injuries occurring through the carelessness of that other in the use of the wagon and horses. He is not responsible for his acts of malice or wantonness, but he is responsible for his reasonable care. And so when the relation of master and servant exists; the master is in like manner responsible for the care his servant may exercise in managing his wagon and horses; and that relation is not dissolved by the fact that the master gives his servant one day free (on which day the servant has the horses and wagon, and from want of care an injury happens), and the master afterwards deducts one day's wages. If Elijah was using the horses and wagon of David Wenrich under a general permission or as his servant, David Wenrich would be responsible for his act of carelessness, resulting in injury to another, as if he had himself been managing them: if he was not so using them, then David Wenrich would not be responsible for his carelessness.

[Bard and Wenrich v. Yohn.]

" The plaintiff cannot recover here, if his misfortune is any wise attributable to his own fault.  If in your judgment his conduct is free from the charge of carelessness and want of prudence, it will be for you then to determine, under the principles given to you in charge, whether these defendants, by concurring acts of carelessness, produced the injury of which the plaintiff complains : if so, your verdict would be against them jointly—if not, and the act of carelessness which produced it was that of Wenrich alone, you verdict would be against him alone, and in favour of Bard. You will bear in mind that neither of these defendants, personally, did anything directly tending to this injury.  Bard does not appear to have been in the street at all; what was done was by his servants.  Wenrich was miles away in the country, and can only be responsible in case you find that his son was acting under a general permission to take the wagon, or as his servant.  Their responsibility, if any, is for the acts of others. These are considerations which should have their weight with a jury in moderating damages.

" The measure of damages is not what we would take ourselves to suffer such a fracture.  We would not endure it perhaps for any amount of money.  But you are not to look at the injury *prospectively* in that way : it is to be regarded rather *retrospectively*, in the light purely of an accomplished ascertained fact.  It has no probable or possible consequences, which, occurring to the imagination, aggravate the terrors of such a misfortune, considered abstractly and contingently.  The suffering and the injury are known ; and what, having endured them, is that fair, just, and reasonable compensation in damages, which, if he is entitled to recover, the plaintiff should receive, it is for the jury to consider and determine."

The jury found a verdict for plaintiff for $525.

The only errors assigned which were reviewed by this court, were to the foregoing charge of the judge who ruled the cause below.

*Strong* and *Davis*, for plaintiff in error.—The joint action against Bard and Wenrich cannot be sustained.  The action against both is for the negligence of their respective servants for different and independent acts, and of different natures.  As to the kicking of the horse, Wenrich is not responsible, unless he knew of his vicious propensities, which must be averred and proved: 1 *Ch. Pl.* 82, 11th Am. ed. ; 1 *Bac. Ab.* 82.  Where several are concerned, they may be jointly sued if they *assented to the act before or after* it was committed.  Neither had any control over the other. They are not in *pari delicto :* 2 *Saund.* 117 a ; Custworth's Case, *Sty.* 153 ; 3 *Esp. N. P. Rep.* 202–4.  The

[Bard and Wenrich *v.* Yohn.]

·case of Rogers *v.* Stewart, 5 *Verm.* 215, does not sustain the ruling of the court below. There they were jointly liable, because they were jointly concerned in keeping the nuisance: Wilson *v.* Peto *et al.,* 6 *Moore* 47; 17 *E. C. L.* 13; Tarr *v.* Voorhees, 7 *Leg. Int.* 114.

The acts of a servant bind his master only when done in the course of his business, or within the scope of his authority: Kerns *v.* Piper, 4 *Watts* 222; Joel *v.* Morrison, 6 *C. & P.* 501; Sleath *v.* Wilson, 9 *C. & P.* 607; Lamb *v.* Polk, *Id.* 629; Church *v.* Mansfield, 20 *Conn. R.* 284; Mitchell *v.* Crasweller, 16 *Eng. L. & Eq. R.* 451; Middleton *v.* Fowler, 1 *Salk.* 282; Croft *v.* Allison, 4 *B. & A.* 590; McManus *v.* Crickett, 1 *East* 106.

*Banks* and *Richards,* for defendant in error.—Were the defend-ants jointly liable? There are some *torts* which in legal considera-tion may be committed by several, and for which a joint action may be supported against all. Where the act could not have been jointly committed, there it is the *tort* of the actual trangressor, or the distinct *tort* of each and separate actions must be brought: 1 *Ch. Pl.* 86. *Their joint* acts produced the *result,* and it was not ne-cessary to allege or prove any direct concert or combination. In all joint trespasses there must be separate acts: Thomas *v.* Rum-sey, 6 *Johns.* 26–32; Boyce *v.* Douglas, 1 *Camp.* 60.

As to the liability of David Wenrich, it was placed upon the ground that Elijah was there with the team as the servant of his father, under a general permission to use it. The jury were satis-fied that the relation of master and servant existed. That the master is liable for injuries occasioned by the negligence of his servants is well settled, even though the servant was driving out of the direct road for his own purpose: 1 *Ch. Pl.* 80, 81.

The opinion of the court was delivered by

KNOX, J.—This record presents for our consideration two questions, viz.:—

1st. Is David Wenrich responsible for the negligence of his son Elijah?

2d. Can there be a joint recovery against Adam Bard and David Wenrich, founded upon separate acts of negligence, when such acts together produced the injury complained of?

Upon a careful examination of the facts of this case, and of the authoritative decisions relating to the liability of a master for the tortious conduct of his servant, we are satisfied that the Court of Common Pleas erred in permitting the jury to render a verdict against David Wenrich. Elijah was not in his father's employ when the act complained of was committed. He was neither acting for his father's benefit, nor by his direction. There was no direct

[Bard and Wenrich v. Yohn.]

evidence that he took the horses to go to Reading with his father's consent. But the consent of the father, even if expressly given, would not have rendered him liable for injuries occasioned by his son's negligence.

If one lets or hires to another a horse to be used exclusively for the purposes of the latter, the owner of the horse is in nowise responsible for the negligent manner in which the horse may be used. That Elijah was in his father's employ generally, did not create the relation of master and servant, so that he could not act for himself and be solely responsible for his own negligence. From all the evidence in the case, we are clearly of opinion that David Wenrich was not liable for his son's negligence in leaving the horses in the street to the plaintiff's injury.

2d. Were the defendants jointly liable? It is not pretended that the acts which occasioned the injury were jointly done; or that there was any understanding or combination between the defendants or their servants in doing the acts complained of. Each party acted for himself, solely. The servants of Bard placed vehicles along the street to accommodate his customers, and young Wenrich left his wagon and horses in the same street, on the opposite side, to accommodate himself. Now, conceding that the independent act of each contributed to the result, can there be a joint recovery against the two for the entire injury?

The Court of Common Pleas instructed the jury that if each acted for himself in a manner to conduce to the result, they might be jointly sued. This instruction cannot be sustained. The declaration charges the defendants as joint wrongdoers. Proof of separate acts, not committed with a common design or for a common purpose, and without concert, will not authorize a joint recovery.

To entitle a plaintiff to a verdict against several defendants as joint trespassers, it must appear that they acted in concert in committing the trespass complained of. Where one person aids, assists, or employs another to commit a trespass, or assents to its commission, having an interest therein, a joint action will lie; but where two or more commit separate trespasses, or do separate acts tending to produce injury to another without concert, there is no joint liability, and consequently there can be no joint recovery. Williams v. Sheldon, 10 *Wend.* 654; Watt v. Ogden, 12 *Wend.* 39. "To render one man liable in trespass for the acts of others, it must appear either that they acted in concert, or that the act of the individual sought to be charged ordinarily and naturally produced the acts of the others:" 19 *J. R.* 382. The doctrine is also distinctly stated by Mr. Justice KENNEDY in Weakly v. Royer, 3 *Watts* 460, that separate acts of trespass where there is no concert will not authorize a joint recovery, although the injury may be common and produced in part by each of the acts.

[Bard and Wenrich *v.* Yohn.]

complained of. One is liable for his own tortious act, or for that of his agent or servant, when done by his direction or with his assent; and sometimes, where he neither directs the act nor assents to its commission, when it is done for his benefit. And he is also liable for the tortious conduct of others committed in pursuance of a common design. But no one can be made to answer for the torts of those with whom he had no connexion, and over whom he had no control. It follows from these principles, that if Bard committed an unlawful act, by reason whereof Yohn was injured, Bard is responsible for the damages sustained in consequence of his act. Or, if the injury was sustained by reason in part of the unlawful act of Bard, and in part on account of the unlawful conduct of young Wenrich, each is liable for the entire injury. But the liability in either case is a separate and not a joint one. A recovery and satisfaction as to one would be a satisfaction as to both. If Bard's acts were lawful in themselves when done, they could not be made unlawful by the subsequent acts of Wenrich without proof that Bard was in some manner connected with or responsible for Wenrich's acts. We do not say that there can be no recovery against Bard alone. What we determine is, 1st, That David Wenrich, under the evidence before us, was not liable for damages done to the plaintiff by the act of Elijah Wenrich; 2d, That there can be no joint recovery against Bard and Wenrich without proof that there was concert of action between the two in doing that which caused the injury to the plaintiff.

The errors assigned upon the admission of evidence are not sustained.

Judgment reversed and *venire de novo* awarded.