# J. Henry Magee *v.* Pennsylvania Schuylkill Valley Railroad Company, Benjamin F. Shibe and the Philadelphia, Bala and Bryn Mawr Turnpike Company. Appeal by Benjamin F. Shibe and the Philadelphia, Bala and Bryn Mawr Turnpike Company.

*Actions—Venue—Jurisdiction—Damages to real property.*

After the defendant has gone to trial on his plea of the general issue, in an action for damages to real estate, he will not be permitted to question the jurisdiction of the court because the property injured is situated in another county, where under the plaintiff's statement he might have raised the objection before trial.

*Water courses—Drains—Turnpike companies.*

A turnpike company which has by means of artificial drains collected in one channel waters which would otherwise have remained stagnant, or evaporated or gradually flowed off, and discharged them in a mass upon the land of a neighboring owner must compensate such owner for any injury that he may have sustained.

*Waters—Increase of volume of water—Pollution—Joint tort feasor.*

In an action of trespass against a turnpike company and an individual owner of land to recover damages for injuries to plaintiff's land caused, first, by an increased volume of water thrown upon the land and, secondly, by the pollution of the water, a verdict and judgment against both defendants as joint tort feasors cannot be sustained, if it appears that, although the increase in the volume of water was the joint act of the two defendants, the pollution of the water was the act of the individual defendant alone.

Where an individual landowner permits a drain to be laid on his premises by a turnpike company to carry off water which would otherwise be cast upon his lot, thus deriving a benefit from the drain, especially if he pay part of the cost of the drain, there is such concert of action as to warrant a verdict against both himself and the turnpike company for the injury resulting to a neighbor's property from the joint act, which would not have resulted if the water had been left to take its natural course.

*Trespass—Joint tort feasors.*

In general, where two or more persons act independently in producing an injury, they are not jointly liable for the combined results of their act, and the fact that it is difficult to determine the relative proportion of injury caused by each is not a sufficient reason for holding them jointly liable.

A turnpike company is not liable for damages for the pollution of water flowing through a ditch or sewer which it had constructed to drain its roadbed, if such pollution is caused by the independent act of a neighboring landowner, without the knowledge or consent of the turnpike company.

Argued Oct. 18, 1899. Appeal, No. 137, Oct. T., 1899, by Benjamin F. Shibe and the Philadelphia, Bala and Bryn Mawr Turnpike Company, from judgment of C. P. No. 2, Phila. Co., June Term, 1895, No. 750, on verdict for plaintiff. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Reversed. Opinion by RICE, P. J.

Trespass for injuries to land. Before PENNYPACKER, P. J.

At the trial it appeared that the plaintiff owned a dwelling house and lot on Bala avenue, Montgomery county, Pennsylvania. He alleged that his land was injured by the action of the defendants in constructing a drain in such a manner as to throw an increased volume of water upon his land, and also by throwing polluted water upon his land, through the drain.

Plaintiff's statement of claim was as follows :

The plaintiff, in February, 1894, was and from that time has been, and still is, possessed of a certain dwelling house and lot with the appurtenances, situate on Bala avenue, in Bala, Montgomery county, Pennsylvania, having a frontage of one hundred feet, and extending of that width from said Bala avenue to the property of the Pennsylvania Schuylkill Valley Railroad Company. During all of said time the plaintiff and his family inhabited and dwelt, and still do inhabit and dwell, in said house.

To the east and adjoining the property of the plaintiff is the said land of the Pennsylvania Schuylkill Valley Railroad Company, one of the defendants to this action, and further to the east and adjoining the property of the Pennsylvania Schuylkill Valley Railroad Company is the property of Benjamin F. Shibe, another of the defendants, said Shibe's property extending eastward to the western side of a turnpike owned and operated by the Philadelphia, Bala and Bryn Mawr Turnpike Company, also a defendant to this action. It became the duty of the said defendants to drain the water from their proprieties by its natural channel, and so that it would not flow upon and over the property of the plaintiff, and so as to cause no increased volumes of water to flow over the plaintiff's land. Yet the defendants, disregarding these duties to the plaintiff, did, wilfully, negligently and without regard to the rights of the plaintiff, drain the water from their properties in such a manner

that it did not flow in its natural course, but caused large volumes of water to flow upon and over the property of plaintiff and increasing the quantity of water passing over the property in times of rainfall to plaintiff's injury, washing ruts in his lawn, flooding his cellar, undermining the foundations of his house, polluting his well and seriously affecting the health of plaintiff and his family and materially interfering with the enjoyment of said property, thereby causing said plaintiff to expend large sums of money in introducing other water on premises for family use ; for procuring medical attendance and medicines for himself and family ; and he will be compelled to expend other large sums in repairing drain on his property and repairing the walls of his house, thereby damaging him to the amount of $5,000, and therefore he brings this suit."

The facts developed at the trial are stated in the opinion of the Superior Court.

Plaintiff's points and the answers thereto among others were as follows :

[1. If the defendants, or either of them, by means of a drain or drains collected in one channel waters which would otherwise remain stagnant or evaporate or gradually flow off, and discharge them in a mass upon the plaintiff's property to his injury, he or they so doing are responsible to the plaintiff in damages. *Answer :* Affirmed.] [1]

[3. If the jury believe that the defendants, or any one of them, made or constructed an artificial drain by which the water from his or their land was discharged upon that of the plaintiff in a different manner from its accustomed channel, and injury resulted therefrom, he or they are responsible in damages, and a verdict should be rendered for the plaintiff. *Answer :* Affirmed.] [2]

[5. If the defendants, or either of them, drained the water from his or their lands upon the land of the plaintiff to his injury, other than by the accustomed and natural channels, they are either severally or jointly negligent and responsible for damages to the plaintiff. *Answer :* Affirmed.] [3]

[6. If the jury find from the evidence that the defendants, or either of them, did so collect water upon his or their own land and turn it in a body on the lands of plaintiff, through an artificial channel made by defendants, or either of them,

and this to the injury and damage of plaintiff, he is then to receive such damage as you believe from the evidence he has sustained. *Answer:* Affirmed.] [4]

Defendants' points and the answers thereto among others were as follows:

[1. In view of the admission of the plaintiff that the property alleged to have been injured is situate in Montgomery county, and that the act done, from which he claims the in-. jury has resulted, resulted from the construction of culverts and pipes in Montgomery county, he is not entitled to recover in the present action, and your verdict must be in favor of the defendant. *Answer:* Refused.] [5]

[2. The turnpike company is authorized to construct drains for the purpose of draining its turnpike. The uncontradicted evidence is that the culvert under the turnpike and the pipe leading from such culvert to the culvert under the right of way of the Pennsylvania Schuylkill Valley Railroad Company, were constructed by the turnpike company for the purpose of draining its turnpike. Under this undisputed state of facts the plaintiff cannot recover in this action, against the turnpike company or against Shibe, any damages occasioned by such construction. *Answer:* Refused.] [6]

[3. Under its charter the turnpike company was authorized to make such ditches and drains as it deemed proper and necessary to carry the water from its roadbed over property which was lower in level than the turnpike. The evidence discloses the fact, uncontradicted, that the drain or culvert under the turnpike carried water through the culvert constructed by the turnpike company; that the natural watershed was from the turnpike across the land of Shibe under said culvert through the railroad embankment across the land of plaintiff. Under these circumstances he is not entitled to recover damages against the defendants for the construction of the drain under the turnpike or of the pipe leading from such drain to the culvert through the railway embankment. *Answer:* Refused.] [7]

[4. It appeared by the uncontradicted testimony that in pursuance of its right, the Pennsylvania Schuylkill Valley Railroad Company constructed a culvert some twenty inches in diameter through its embankment which opened upon the land of the plaintiff to the west. It was within the right of the turnpike

company to drain its turnpike by a culvert under the same and by a pipe across the lands of Shibe into and through this railway culvert. If you find that the turnpike company constructed said culvert and pipe for the purpose of draining its turnpike, there can be no recovery in the present suit against it. *Answer :* Refused.] [8]

[5. The defendants in this case are not joint tort feasors. Under no circumstances would Shibe be liable for the action of the turnpike company in draining its turnpike, nor would the turnpike company be liable for the action of Shibe in opening a connection with its pipe, nor for his action in altering the grade of his lot. *Answer :* Refused.] [9]

[6. In the course of improvement of suburban property the owner may fill up his ground to adapt it for residence, without responsibility to the adjoining owner, whose land is lower than his own, upon whose property the water may be thrown. In the course of improvement of suburban property each owner must take care of the water which naturally flows on his ground. *Answer :* Refused.] [10]

[7. If you find that the natural water course was from the turnpike across land of Shibe through the railway culvert, and across the land of the plaintiff; that in the course of his building improvements Shibe prevented the water from running across his land and through the same along the turnpike towards the south, it was the right of the turnpike company to so construct its drains that the water would not continue to flow along its turnpike to the south, out of its natural course; but to construct drains in such way that the water would flow in accordance with its natural course across the lands, including that of the plaintiff, to the west. *Answer :* Refused.] [11]

[8. Your verdict must be for the defendants. *Answer :* Refused.] [12]

Verdict and judgment for plaintiff for $350. Defendants appealed.

*Errors assigned* were (1–12) above instructions, quoting them.

*John G. Johnson,* for appellants.—The turnpike company by laying a pipe for the purpose of draining its turnpike down a natural water course was not guilty of a trespass: Act of January 26, 1849, P. L. 10; Act of June 13, 1836, P. L. 551.

Under the evidence a joint verdict or judgment could not be permitted against Shibe and the turnpike company: 1 Chitty on Pleading, 97.

The action was local, and the court of common pleas of Philadelphia county had no jurisdiction of the same: Prevost v. Gorrell, 2 W. N. C. 440; 1 Chitty on Pleading (4th Am. ed.), 270; Oliphant v. Smith, 3 Penrose & Watts, 180; Musselman's App., 101 Pa. 165.

*John E. McCully*, with him *Thomas G. Hawkes*, for appellee. —An owner of land has no right by means of drains to collect in one channel waters which would otherwise remain stagnant, or evaporate or gradually flow off, and discharge them in a mass upon his neighbor: Kauffman v. Griesemer, 26 Pa. 407; Martin v. Riddle, 26 Pa. 415; Miller v. Laubach, 47 Pa. 154; Hays v. Hinkleman, 68 Pa. 324.

The Philadelphia, Bala and Bryn Mawr Turnpike Company, being a corporation existing in Philadelphia county, was properly liable to suit in said county, and Shibe, the other defendant, voluntarily submitted himself to the jurisdiction. The proper time and way to have determined this question was by plea in abatement or demurrer, and a failure ·· ᵗʰeir part to avail themselves of the privilege at the proper timᵦ `cludes them from so doing now, and the trial judge properly refused to give binding instructions for the defendants.

OPINION BY RICE, P. J., March 21, 1900:

This was an action of trespass. The gravamen ᵒf the plaintiff's complaint, as set forth in his statement of cᵤaim, was an injury to real property situated in Montgomery county, occasioned by certain acts of the defendants on their own properties. It appeared on the trial that these properties are also situated in Montgomery county, but this fact was not distinctly averred in the statement. It should be noticed, however, that they were so described in the statement that the defendants must have known with reasonable certainty that the property alleged to have been injured was situated, and the acts alleged to have caused the injury were done, in Montgomery county. The defendants neither demurred, pleaded in abatement nor moved for a more specific statement, but

pleaded the general issue, and at the conclusion of the testimony asked the court to charge as follows: "In view of the admission of the plaintiff that the property alleged to have been injured is situated in Montgomery county, and that the act done, from which he claims the injury has resulted, resulted from the construction of culverts and pipes in Montgomery county, he is not entitled to recover in the present action, and your verdict must be for the defendant." The refusal of this point is the subject of the fifth assignment of error.

1. The general rule of the common law was that an action, though merely for damages to real proper y, is local, and should be brought in the county where the property is situated. And this general rule still prevails in Pennsylvania: Prevost v. Gorrell, 2 W. N: C. 440. "Where, however, an injury has been caused by an act done in one county to land situate in another, or whenever the action is founded upon two or more material facts which took place in different counties, the venue may be laid in either:" 1 Chitty on Pleading (13th Am. ed.), *268. The fact that the road of the turnpike company, one of the defendants, extends into another county does not, without more, bring the present case within the foregoing exception to the rule, nor within any other to which our attention has been called. But there is a plain distinction between an action for the recovery of damages for an injury to real property and an action or proceeding in rem, where the effect of the judgment could not be had if it were instituted in the wrong county, as in ejectment where possession is to be delivered by the sheriff of the county. This has an important bearing upon the question of the effect of pleading the general issue and going to trial without raising the objection, in some form, that the action was brought in the wrong county. It may well be conceded that in cases of the latter class the objection may be taken advantage of at any stage of the proceedings, without conceding that it may be held in reserve until the end of a trial on the merits in cases of the former class. Having regard to the reason of the rule by which actions merely for damages to real property are classified as local and not transitory, we should be inclined to hold, even in the absence of an authoritative ruling on the question, that the objection may be waived, and is waived by pleading the general issue

and going to trial. But we are not without authority. In opening a judgment the court of common pleas imposed a condition that the defendant should not plead to the jurisdiction of the court. . Mr. Justice Strong, who delivered the opinion of the Supreme Court, said : " In this case the defendant's objection was that the cause of action was local, that the tort complained of had been committed in Armstrong county and not in Clarion, and that the action could therefore be maintained only in Armstrong. This was only an objection to the power of a court to try the particular case, and not to its power to try cases of the same general character. It is difficult to see why the defendant could not waive such an objection, and therefore why the court could not make it one of the conditions in opening the judgment that the defendant should waive it. It is true the general rule is that want of jurisdiction may be taken advantage of in any stage. of the proceedings, but where the court has jurisdiction over such a subject-matter, and is only restricted from entertaining the individual case by some circumstances peculiar to itself, the party who denies the jurisdiction must avail himself of those peculiar circumstances, and a condition imposed upon him not to do so appears to us not illegal : " Putney v. Collins, 3 Gr. 72. This case was followed and the principle reaffirmed in Fennell v. Guffey, 155 Pa. 38. That was, in substance, an action of covenant upon an oil lease, brought by the lessor against the assignee of the lessee to recover rents and royalties, and according to some authorities was local. See Chitty on Pleading (13th Am. ed.), *271. The question was raised on the trial and reserved. Judgment was subsequently entered for the· plaintiff which was affirmed on appeal. The Supreme Court, after quoting from the opinion in Putney v. Collins, said : " If we concede the defendant's position it was too late to take ad-" vantage of it after plea pleaded. It was at most a personal exemption, and the point should have been raised before the trial. By failing to do so he has waived his privilege." The same doctrine is recognized elsewhere. See note to 1 Chitty on Pleading (16th Am. ed.), *280, citing Webb v. Goddard, 46 Me. 505, Demuth v. Cutler, 50 Me. 298, and Brown v. Webber, 60 Mass. 560. So where a policy of insurance provided that action thereon could be brought only in the county where

the home office of the defendant was situated, it was held that the provision, even if valid, was waived by pleading in bar. Mr. Justice DEAN said: "The plea should have been in abatement of the action before plea in bar; not having been so entered, it will be deemed as waived:" Smith v. Ins. Co., 173 Pa. 15. It is true in Oliphant v. Smith, 3 P. & W. 180, the objection that the action was brought in the wrong county seems not to have been raised until the testimony was offered, but that was an action founded on a statute which provided that the remedy must be pursued in the county where the dam is erected. Moreover, whilst the court discussed the common-law rule, it does not appear from the report of the case that the effect of pleading the general issue in cases governed exclusively by that rule was considered. We do not think the decision can fairly be regarded as ruling that point. But it is argued the statement in the present case did not aver that the act causing the injury complained of was done in Montgomery county, therefore the defendant could not demur. In reply, it may be said, neither did it aver that the act was done in Philadelphia county, therefore the defendants were not justified in presuming until the evidence was heard that the case was within the exception to the rule which permits the action to be brought in either county, where the property injured is in one county and the act causing the injury was done in another. And, as we have already remarked, the statement was sufficiently specific in the description of the locus in quo to make it clear to them at least that the case was not within that exception. We see no good reason why they might not have raised the objection to the jurisdiction of the court before the trial. Not having done so we conclude that they must be deemed to have waived it, and that the court below was clearly right in refusing the point.

2. The facts of the case, few of which are in dispute, are very concisely and accurately summarized in the charge of the learned trial judge. It will be convenient, however, for the purposes of the discussion of the remaining assignments of error to briefly recapitulate them.

The premises of B. F. Shibe, one of the defendants, front on the turnpike of the Philadelphia, Bala and Bryn Mawr Turnpike Company, the other defendant, and are bounded in the

rear by the Pennsylvania and Schuylkill Valley Railroad Company, on the opposite side of which are the premises of the plaintiff.

The situation of the plaintiff's place was low. There was a fall from the turnpike to the lower end of the Shibe lot of about twelve feet, and a further fall from the end of the plaintiff's lot on the railroad to Bala avenue, on which it fronts, of about eight feet.

The natural course of surface water from the turnpike was over the Shibe lot. What was not absorbed or did not evaporate was carried off through a gully extending across his lot to the railroad and was then conducted through a culvert under the railroad to the land of the plaintiff, whose predecessor in title had constructed a nine-inch drain opposite the culvert to receive the same.

In 1894, Mr. Shibe filled up his lot and the gully above referred to, the consequence of which was to turn the water back onto the turnpike, and thence out of its natural course to lands on the south. Thereupon the turnpike company, with the consent of Shibe, constructed a culvert under and across the turnpike, in which was laid a twelve-inch iron pipe, and connected it with a terra-cotta pipe laid across the Shibe lot to the railroad culvert in substantially the same course that the water naturally flowed before.

It is self evident, as the defendants' counsel says, that the railroad culvert necessarily concentrated all the water which reached the plaintiff from the east, and neither of the appellants is responsible for the consequences of concentrating the flow of water through that culvert. But the clear preponderance of evidence established the fact that, in consequence of the construction of the artificial drain which led to the culvert, more water was brought on the plaintiff's land than would have reached it if the water had been allowed to take its natural course, and that the plaintiff's property was injured thereby. We do not think it can be disputed that the plaintiff would be entitled to damages for the resultant injury, even though no additional water ran from the pipe than the quantity which would have been absorbed if it had been allowed to run over the surface of Shibe's land. The court correctly charged that an owner of land has no right by means of artificial drains to

collect in one channel waters which would otherwise remain stagnant, or evaporate or gradually flow off, and discharge them in a mass upon his neighbor: Kauffman v. Griesemer, 26 Pa. 407; Miller v. Laubach, 47 Pa. 154; Hays v. Hinkleman, 68 Pa. 324. If this were a dispute between two private individuals the right to maintain an action of trespass—which under our procedure includes both trespass and case—could not be denied, if the facts be as found by the jury. Nor, it seems to us, is the case different because one of the defendants is a turnpike company and has a right under its charter to make drains for the purpose of preserving its roadbed in a condition suitable for travel. It cannot exercise that right in the manner above described without making or securing compensation to the party injured. Security was not given or tendered—indeed the plaintiff testified that he was wholly ignorant of the proceeding until the work was completed—and in the absence of an exclusive statutory remedy for the recovery of compensation in such a case, a common-law action may be maintained. Whether successive actions may be brought as for a continuing nuisance, or the defendant at its election might have had the entire damages as for a permanent appropriation assessed in this action is a question not necessary to be passed on here. But see Hankey v. Philadelphia Co., 5 Pa. Superior Ct. 148. The defendants contended in their second, third and fourth points (sixth, seventh and eighth assignments) that the plaintiff could not recover anything, because of the company's charter right to drain their roadbed. The question of the measure of damages was not raised by these points, and for the reasons given we are of opinion that they were properly refused.

3. The defendants further contend that under the evidence a joint verdict or judgment could not be permitted against Shibe and the turnpike company. In considering this proposition it will be necessary to go a little more into detail in examining the plaintiff's claim and the evidence adduced in support of it. He claimed that he was injured in two ways: first, by the increase of the volume of water brought from the turnpike and cast on his lot; second, by the pollution of the water. Evidence was given as to his damages in respect of each of these alleged injuries, and the case was submitted to the jury with instructions that they might take both into consideration. To

what extent the verdict was made up of the damages sustained in consequence of the increase in the volume of water, and to what extent of the damages caused by the pollution of the water we have no means of knowing. The principle is the same whether the relative proportion of his injury from the latter source was large or small. But it is manifest that if as to either of these injuries the defendants were not joint tort feasors it was error to permit the jury to render a verdict against both defendants for the damages arising from that cause.

We are not convinced that the court could have charged as matter of law that Shibe was not jointly liable with the turnpike company for the injury caused by the use of the drain for the purpose of casting upon the plaintiff's lot water that would not have reached it if it had been allowed to take its natural course. We have already alluded to the fact that it was constructed and maintained across Shibe's lot with his consent; he knowing the purpose for which it was constructed, and, presumably, knowing the effect upon his neighbor's property of thus concentrating in an artificial channel the water that formerly flowed over and upon his own property. In addition to this, his testimony, whilst confused, evasive and somewhat contradictory, tended to show that he contributed to the cost of the drain. Indeed, he said so in one part of his testimony, and, whilst he qualified this somewhat, when called later in the case, it was for the jury to determine his credibility as a witness, the meaning of his words, and find the facts: Maynes v. Atwater, 88 Pa. 496; Loeb v. Mellinger, 12 Pa. Superior Ct. 592. "A trespasser may be not only he who does the act, but who commands or procures it to be done . . . . who aids or assists in it . . . . or who assents afterwards:" Barker v. Braham, 2 W. Bl. 866, cited in Pollock on Torts, 87. "Where one person aids, assists, or employs another to commit a trespass, or assents to its commission, having an interest therein, a joint action will lie:" Bard v. Yohn, 26 Pa. 482. If Shibe permitted this drain to be laid on his premises to carry off the water, which but for his previous act would have been cast upon his lot, thus deriving a benefit from it, and especially if he paid part of the cost of it, there was sufficient evidence of concert of action to warrant a verdict against both parties for the injury of every kind resulting to the plaintiff's property from their joint act, which

would not have resulted if the water had been left to take its natural course.   The learned trial judge was clearly right in holding that, as to this branch of the plaintiff's claim, it was not within the province of the court to declare that there was no evidence to show a joint liability.

As to the other branch of the plaintiff's claim a different state of facts is presented.   As we have repeatedly said, the drain was constructed for a particular purpose, namely to drain the turnpike.   There is not a scrap of testimony tending to show that any other use of it was contemplated when it was originally constructed.   It appears, however, that after its construction, Shibe opened a connection with this drain for the purpose of carrying off the refuse water from his kitchen and washhouse.   It was claimed that this (we quote now from the charge), " had a tendency to pollute the well—the waters which were in the well of the plaintiff."   There is no evidence that the representatives of the turnpike company knew of Shibes use of the drain for this purpose until after he had made the connection, nor is there any evidence that they ever, either expressly or impliedly, assented to it.   In general where two or more persons act independently in producing an injury, they are not jointly liable for the combined results of their acts, and the fact that it is difficult to determine the relative proportion of injury caused by each is not a sufficient reason for holding them jointly liable.   The principle is well illustrated in Little Schuylkill Nav. Co. v. Richards, 57 Pa. 142.   Suit was brought for damages to a dam filled by deposits of coal dirt from different mines on the stream, some of which were worked by the defendants and their tenants, and some by persons not connected with the defendants.   It was held that the defendants were not liable for the whole damage caused by the deposits, nor for the acts of their tenants so far as these were done without their sanction. Mr. Justice AGNEW said : " Without concert of action, no joint suit could be brought against the owners of all the collieries, and clearly this must be the test."   This principle has been recognized in many similar cases in Pennsylvania, amongst which may be mentioned, Seely v. Alden, 61 Pa. 302, Little Schuylkill Nav. Co. v. French, 81* Pa. 366, Gallagher v. Kemmerer, 144 Pa. 509.   It has also been recognized and applied in cases brought to recover damages for the pollution of a stream by

sewage discharged into it by different riparian owners: Chipman v. Palmer, 77 N. Y. 51; Sellick v. Hall, 47 Conn. 260. In the New York case, MILLER, J., said: "The right of action arises from the discharge into the stream, and the nuisance is only a consequence of the act. The liability commences with the act of the defendent upon his own premises, and this act was separate and independant of and without any regard to the act of others. The defendants' act, being several when it was committed, cannot be made joint because of the consequence which followed in connection with others who had done the same or a similar act." See further Weakly v. Royer, 3 W. 460, Bard v. Yohn, 26 Pa. 482, Simpson v. Seavey, 8 Maine, 138, and Gould on Waters, sec. 222. We think the principle applicable here. If there were any evidence that the drain was constructed as a common drain or sewer, or that the turnpike company either expressly or impliedly assented to the use that Shibe made of it, the case would be different. But, in view of the undisputed facts to which we have alluded at the outset of the discussion of this branch of the case, it is impossible to see how the turnpike company can be held liable for the pollution of the plaintiff's well resulting from the independent act of Shibe in turning his kitchen sewage into the drain.

Without further elaboration we conclude, first, there might have been a verdict against both defendants for the damages for which they were jointly liable; or, second, if the plaintiff saw fit to abandon that claim, there might have been a verdict against Shibe alone for the injury for which he alone was liable; but, third, there could not be a verdict against both defendants for both injuries. Whilst, therefore, the defendants were not entitled to an unqualified affirmance of their fifth point (ninth assignment) yet the plaintiff's points, especially the sixth, (fourth assignment), should have been qualified as indicated in the foregoing opinion.

The judgment is reversed and a venire facias de novo awarded.