# Herbstritt *v.* The Lackawanna Lumber Company, Appellant.

*Practice, C. P.—Amendment—Master and servant—Negligence.*

Where an action of trespass is brought for the death of a person alleged in the statement of claim to be an employee of the defendant, the statement may be amended after the period of the statute of limitations has expired, by an averment that the deceased was an employee of a third party, and not of the defendant.

*Negligence—Railroads—Private railroads—Proximate and remote cause.*

In an action against a corporation owning a private railroad, to recover damages for the death of plaintiff's husband, it appeared that at the time of the accident the decedent was working on some standing cars, and that

certain other cars which were being loaded on the same branch track further up a grade, broke away, ran down the grade, collided with the car upon which the deceased was standing, and killed him. The evidence showed that on a Sunday night the defendant switched the cars which broke loose, to the point where they were to be loaded, and after setting the brakes and propping the wheels with wood, delivered them over to the employees of another company or a contractor for such company. Before the loading began the foreman in charge put additional props under the wheels. As the loading progressed the increased weight of the car caused the shoes of the brake to settle away from the wheels, and loosened them, causing the cars to break away. The brakes were not tightened up as the loading progressed, although this was customary. The accident occurred on Tuesday. It was claimed that additional safety switches should have been placed by the defendant along the tracks, in anticipation of such an accident. It was shown that the use of such a switch would tend to make more dangerous the ordinary operations of the cars over the tramway, and that, as a rule, they were only placed at the lower end of the branch track, so as to protect the main line. *Held*, (1), that as the cars which broke loose were not in the possession of, or under the control of the defendant at the time of the accident, the latter was not liable; (2) that the absence of a safety switch was not, under the circumstances, the primary or proximate cause of the accident; and (3) that binding instructions should have been given for defendant.

Argued May 2, 1905. Appeal, No. 348, Jan. T., 1904, by defendant, from judgment of C. P. Potter Co., June T., 1902, No. 91, on verdict for plaintiff in case of Amanda Herbstritt v. The Lackawanna Lumber Company. Before MITCH-ELL, C. J., DEAN, BROWN, MESTREZAT and ˙POTTER, JJ. Reversed.

˙ Trespass to recover damages for death of plaintiff's husband. Before ORMEROD, P. J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $8,000. Defendant appealed.

*Errors assigned* among others were (2, 3, 7) refusal of defendant's points; (8, 15 and 16) quoted in the opinion of the Supreme Court; and (1) in allowing the amendment of the statement.

*Samuel B. Price*, with him *W. I. Lewis* and *Arch. F. Jones*, for appellant.—After the statute of limitations has run, the plaintiff will not be permitted to shift his ground or enlarge

its surface by amendment : Frauenthal v. Derr et al., 3 Kulp, 379 ; Whitaker et al. v. Thompson et al., 2 Kulp, 250 ; Smith v. Smith, 45 Pa. 403 ; Wright v. Hart, 44 Pa. 454 ; Grier v. Assurance Co., 183 Pa. 334 ; Knox v. Hilty, 118 Pa. 430 ; Peterson v. R. R. Co., 195 Pa. 494 ; Philadelphia v. Pass. Ry. Co., 203 Pa. 38.

In order that the person who has been injured by accident may hold another responsible on the ground of negligence, there must be a causal connection between the negligence and the hurt : Curtin v. Somerset, 140 Pa. 70 ; Price v. R. R. Co., 202 Pa. 176 ; Mixter v. Imperial Coal Co., 152 Pa. 395.

Where the facts are undisputed the question of proximate cause is always for the court : Hoag v. Lake Shore & M. S. R. R. Co., 85 Pa. 293 ; West Mahonoy Township v. Watson, 116 Pa. 344 ; Scott v. Allegheny Valley Ry. Co., 172 Pa. 646.

*Eugene Mullin*, with him *J. P. Mullin*, for appellee.—Notwithstanding the provisions of the act of 1855 requiring suit to be brought within one year, the declaration may be amended after the expiration of one year : Huntingdon & Broad Top R. R. Co. v. Decker, 84 Pa. 419 ; Seipel v. R. R. Extension Co., 129 Pa. 425 ; Fillman v. Ryon, 168 Pa. 484 ; Booth v. Dorsey, 202 Pa. 381 ; Bigler v. Lead & Oil Co., 50 Pitts. L. J. 32 ; Erie City Iron Works v. Barber, 118 Pa. 6.

If the defendant company was operating this railroad for the benefit of the public, as the evidence discloses, it was a railroad company within the meaning of the act of 1868 and the provisions of the act would be applicable to the case at issue : Green's Brice's Ultra Vires, 279 ; Auburn & Cato Plank-Road v. Douglass, 9 N. Y. 444.

It was the duty of the defendant to properly block or secure the cars which caused the accident in such a manner as to prevent them from breaking away. It was also its duty to furnish its employees with proper materials to safely hold the cars in position and there is no evidence that this was done : Butterman v. McClintic-Marshall Const. Co., 206 Pa. 82 ; North Pennsylvania R. R. Co. v. Kirk, 90 Pa. 15 ; Buente v. Traction Co., 2 Pa. Superior Ct. 185 ; Henderson v. R. R. Co., 144 Pa. 461 ; Strawbridge v. Bradford, 128 Pa. 200.

The question of negligence ought generally to be submitted

to the jury: Hydraulic Works Co. v. Orr, 83 Pa. 332; Railroad Company v. McKeen, 90 Pa. 122; Railroad Company v. Killips, 88 Pa. 405; Murphy v. Crossan, 98 Pa. 495; Schum v. R. R. Co., 107 Pa. 8; Penna. R. R. Co. v. Peters, 116 Pa. 206.

If a master subjects his servants to dangers such as he ought to provide against, he is liable for any accident resulting therefrom: Patterson v. Pittsburg, etc., R. R. Co., 76 Pa. 389; Prescott v. Ball Engine Co., 176 Pa. 459; McCombs v. Ry. Co., 130 Pa. 182; Donner v. Del. & Hudson Canal Co., 164 Pa. 17; Englehaupt v. Erie R. R. Co., 209 Pa. 182; Rahenkamp v. Traction Co., 14 Pa. Superior Ct. 635; Bunting v. Hogsett, 27 W. N. C. 317; Butterman v. McClintic-Marshall Const. Co., 206 Pa. 82.

*Samuel B. Price,* with him *W. I. Lewis* and *Arch. F. Jones,* for appellant, in reply.—No act of the defendant was the proximate cause of the accident.

Where an independent intervening cause interrupts the natural sequence and causal connection between the original act of negligence and the injury, the intervening cause becomes the proximate cause and the author of the negligence is not liable: Milwaukee, etc., Ry. Co. v. Kellogg, 94 U. S. 469; Fairbanks v. Kerr, 70 Pa. 86; Scheffer v. Washington City, etc., R. R. Co., 105 U. S. 249.

The negligence alleged in the declaration is the neglect to provide sufficient brakes, and to provide safety switches.

If the act of 1868 applies, and the deceased was a co-employee under its terms, there can be no recovery because the negligence, if there were any, was that of a co-employee: Ricard v. North Penna. R. R. Co., 89 Pa. 193; Balt. & Ohio R. R. Co. v. Colvin, 118 Pa. 230.

OPINION BY MR. JUSTICE POTTER, June 22, 1905:

The defendant company owned and operated a private railroad and several switches, which it used chiefly for handling its own logs and bark. The plaintiff's husband, Andrew J. Herbstritt, was on January 21, 1902, in the employ of the Pennsylvania Stave Company, and was engaged in scaling logs

which were being loaded upon railroad cars, standing on a tramway of the defendant.

Six box cars, which were not the property of the defendant, but belonged to railroad companies, were standing on the same tramway, some distance up the grade, from the point where Mr. Herbstritt was at work. These cars were being loaded by the Bayliss Pulp Company, or its employees. In some manner, not shown by the evidence, these cars broke away and ran down the grade, and ran into the cars upon which Mr. Herbstritt was standing, and he was killed. His widow afterwards brought this suit to recover damages, for causing his death.

The declaration as first filed, alleged that Herbstritt was employed by the defendant company; but the evidence at the first trial showed that this was a mistake and that he was employed by the stave company. A nonsuit was entered, which was subsequently taken off, and an amendment to the declaration was allowed, charging " that the said Andrew J. Herbstritt, husband of the plaintiff, was employed by the Pennsylvania Stave Company to scale logs upon the premises of the defendant. In pursuance of such employment, and with the consent of the defendant company, said Andrew J. Herbstritt, was engaged in the business of scaling logs."

Objection was made to the allowance of the amendment, upon the ground that it materially changed the cause of action, after the bar of the statute of limitations had interposed. The objection was overruled, and this action of the court is made the subject of the first assignment of error. We have not been convinced that the court was wrong in this respect. The real cause of action as alleged in the first declaration, was the killing of the plaintiff's husband, by the negligence of the defendant company in permitting the loaded cars to descend the steep grade and strike the cars upon which Andrew Herbstritt was working, with such force as to cause his death. This was the real cause of complaint, and it remained the same under both declarations. The measure of responsibility would of course vary, in accordance with the fact of Mr. Herbstritt being an employee of the defendant or not: but in any event the cause of action was the alleged negligence in permitting the escape of the loaded cars, and the consequent disastrous collision.

The serious question in the case is raised by the third

assignment which alleges error in the refusal of the defendant's fifteenth point, which was as follows: "Fifteenth. The uncontradicted evidence in this case being that the cars that caused the injury were in the possession and use of the pulp company and its servants and employees from Sunday night until Tuesday, the day of the accident, breaks the causal connection between any act of the defendant company and the accident, and thereby relieves the defendant company from any liability."

The same question is also raised by the seventh assignment, which complains of the refusal of the defendant's eighth point, as follows: "Eighth. The cars, the breaking away of which caused the death of the plaintiff's husband, not being in the possession of the defendant, not being used by the defendant at the time, but being loaded by strangers to the case, for their own use, the defendant cannot be made to answer for the result of the accident."

It appears clearly from the evidence that the six cars which broke loose and caused the death of the plaintiff's husband, were sent in at the request of the Bayliss Pulp Company, or of persons who were employed by them or who contracted with them to supply wood for the purposes of making pulp. The defendant company switched the cars in with its engine, and by its employees, set the brakes on the cars and left them at the point designated by the pulp company. As there was considerable grade at the place where the cars were left standing, they did not depend upon the holding power of the brakes alone, but, in addition, the cars were propped with short pieces of wood placed, against the end. and at the sides, braced between the axle and the ties. The cars in question were switched in on Sunday, and left to be loaded for the pulp company, and so remained standing upon the tracks until the following Tuesday morning.

It appears from the testimony that a Mr. Fitzgerald had the contract to furnish this wood to the pulp company. He in turn contracted with one, Comstock, to load the wood at so much per cord. Mr. Hill, who was foreman for Fitzgerald, sent the order for the cars to the defendant company, and he testifies that they were delivered on Sunday afternoon. He says that the next morning after the cars were placed on the

switch, he took a man with him and propped one side, while his companion did the other side, of the six cars that were standing there. This shows that he was not depending upon the props already placed in position by the employees of the defendant company when the empty cars were left standing upon the switch. He then ordered the cars to be loaded full of wood.

It is very clear from the testimony that the defendant company had nothing whatever to do with the control or care of these cars after they were switched in. During the time they were being loaded, they were in the hands and under the control of the contractors who were loading them with wood. It does not appear what caused the cars to start. But no reasonable cause was suggested, other than that of the additional weight caused by the loading of the cars. It might have been that the brakes were loosened by some one; but whether or not this was the case, does not appear. The brakes and the props were sufficient to hold the cars in place while empty, and apparently for some little time after they were loaded. It does clearly appear that when the pulp company took possession of the cars and began loading them it assumed the responsibility of holding the cars in place. This was shown by the fact that the first step taken by Mr. Hill when he began the operation of loading, was to place additional props under and upon both sides of the cars.

One of the witnesses, Mr. Peck, testified that loading the cars had an effect upon the brakes, and that, as the weight increased upon the car, it caused the shoes to settle away from the wheels, and loosened them. He said that it was customary in loading such cars, to keep tightening up the brakes, and that this was done by the jobber, or the man who ordered the cars and under whose direction they were being loaded. It would be most unreasonable to hold the defendant company responsible for the management of the cars during the time they were in the possession of the employees of the pulp company or its contractors, while being loaded. The responsibility for permitting the cars to escape must be placed upon the men who were in control of them at the time. Clearly these men were not the employees of the defendant company. It is no less clear that the direct and proximate cause of the

accident was the breaking away of the cars. In the argument of counsel for the appellee, considerable stress was placed upon the contention that additional safety switches should have been placed by the defendant company along the tracks, in anticipation of such an accident as this. But, under any circumstances, the absence of a safety switch was not the pri mary or proximate cause of the accident. The use of a safety switch would be but the interposition of an heroic. remedy whereby the runaway cars, after having started on their down-ward career, might be derailed and wrecked. The safety switch would not guard in any way men or property, if any there were on the runaway cars, although if effective it would prevent collision with anything below the switch. It was also shown by the testimony that the use of additional safety switches would tend to make more dangerous the ordinary operation of the cars over the tramway, and that, as a rule, they were only placed at the lower end of the branch track, so as to protect the main line.

A careful examination of the evidence has satisfied us that the defendant's eighth and fifteenth points should have been affirmed. So also should the sixteenth point, which asked for binding instructions in its favor.

The second, third and seventh assignments of error are sustained, and the judgment is reversed.