## Jordan *v.* Vare, Appellant.

*Negligence—Injuries from runaway horse—Ownership of horse.*

Where a man loans or hires a horse to another to be used for the purposes of the latter, the owner of the horse is in no wise responsible for the negligent manner in which the horse may be used.

The loan of a horse by its owner to a faithful former employee, does not, in the absence of something more, warrant a jury in finding that such generosity was prompted by a fraudulent motive, or to conceal a real fraudulent design.

Where a contractor for cleaning the streets of one district in a city loans a horse to a former faithful employee to be used in the latter's work in cleaning the streets of another district for which

202, (1917).]	Syllabus—Arguments.

he had the contract, the owner of the horse, in an action against himself for personal injuries suffered from the negligent handling of the horse by the second contractor's servant, cannot be shown to have had an interest in the contract of the person to whom the horse was loaned, by mere proof that indemnity insurance had been taken out in the joint names of both contractors "as their interests may appear," where there is no evidence to show that the policy was taken out by the direction or with the consent of the first contractor, and it also appears that the policy covered horses stabled or used in both districts.

Argued Oct. 12, 1916. Appeals, Nos. 95 and 320, from judgments of C. P. No. 4, Philadelphia Co., June T., 1914, No. 3619, on verdict for plaintiff in case of J. S. Jordan and Maumee Jordan, his wife, *v.* Edwin H. Vare. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART and WILLIAMS, JJ. Reversed.

Trespass to recover damages for personal injuries. Before CARR, J.

At the trial it appeared that Mrs. Jordan was injured on April 15, 1913, at Fifty-second street and Baltimore avenue in the City of Philadelphia. She was knocked down while walking on the sidewalk by a horse owned by the defendant, but which had been loaned to P. C. Eisele, a former employee of the defendant. The circumstances of the accident are stated in the opinion of the Superior Court.

Verdict and judgment for Maumee Jordan for $1,300, and for J. S. Jordan, her husband, $700. Defendant appealed.

*Error assigned* was in refusing defendant's motion for judgment n. o. v.

*David Phillips,* for appellant.—Ownership, control or responsibility for the use of the premises or instrumentality causing the injury must be shown to be in the defendant: Sarver v. Mitchell, 35 Pa. Superior Ct. 69;

Durham v. Strauss, 38 Pa. Superior Ct. 620; Lotz v. Hanlon, 217 Pa. 339; Herbstritt v. Lackawanna Lumber Co., 212 Pa. 495.

*Harman Yerkes,* with him *Jos. G. Denny, Jr.,* for appellees, cited Kelton v. Fifer, 26 Pa. Superior Ct. 603; Corpies v. Sand Co., 31 Pa. Superior Ct. 109; Hershinger v. Penna. R. R. Co., 25 Pa. Superior Ct. 150.

OPINION BY PORTER, J., July 13, 1917:

Mrs. Jordan, while walking along the sidewalk at Fifty-second street and Baltimore avenue, Philadelphia, was knocked down and seriously injured by a horse which had escaped from his driver. The plaintiffs brought this action to recover damages for said injuries, alleging that the escape of the horse from control and his running away had been due to the negligence of the defendant or his employee. The trial resulted in a verdict and judgment in favor of the plaintiffs and the defendant appeals. •

The evidence introduced by the plaintiffs may be accepted as establishing the following facts: P. C. Eisele had secured from the City of Philadelphia the contract for cleaning the streets in the eighth cleaning district of the city. He had long been employed by the defendant, but in 1913 started in business for himself. The defendant, having a surplus of teams, loaned to Eisele, a number of teams, one being that in question. Eisele, through his superintendent Rice, hired Hannibal Pendleton as a driver, and put him in charge of this team. The wages of Pendleton were regularly paid by Eisele and he did his work only under the control of Eisele and his superintendent, Rice. On April 15, 1913, some weeks after Pendleton had been engaged in the work, he was driving the team attached to a rotary street sweeper on Fifty-second street and in making a turn one of the horses slipped on the wet asphalt pavement and fell. The driver thereupon got down from his seat, unfastened

the traces and breast chains of the standing horse, unsnapped the reins between the horses, and leaving the horse standing unhitched tried to get the fallen horse upon his feet; that horse in struggling kicked the standing horse on the leg, whereupon the latter ran away and caused the injuries complained of. Pendleton, the driver, was called as a witness by the plaintiffs and testified that he was hired by Rice, the superintendent for Eisele, that he was paid by Eisele and that he never had any talk with the defendant. Eisele was also called as a witness by the plaintiffs and testified that he alone had the contract for the street cleaning in the eighth district and that the defendant had no interest in the contract or the work done under it, that the defendant had loaned him the team which Pendleton was driving and that Pendleton was his employee. There was not a scintilla of evidence to the effect that this defendant had in any manner interfered with or exercised any control over the work for which Eisele had the contract.

The evidence produced by the defendant was in entire harmony, so far as his connection with the work was concerned, with that of the witnesses for the plaintiffs. The defendant testified that he was the owner of the team in question, that he had loaned the team and others to Eisele, who had formerly been a faithful employee, and that he did this without expectation of compensation. It is, however, contended on the part of the appellees that there was sufficient evidence in the case to warrant a finding that the defendant was really interested in the contract for cleaning the streets in the eighth district, that the contract was taken in the name of Eisele but that he was really merely the representative of the defendant. The evidence which is supposed to furnish a foundation for this contention is, (1) That the defendant had loaned this and other teams to Eisele, that the property of the defendant was used in doing the work; and (2) That a certain application for indemnity insurance was made and a policy taken out in the name

of "E. H. Vare and P. C. Eisele as their interests may appear." With regard to the first item of evidence we deem it sufficient to say that the mere fact that a man has been generous with a friend or relative or faithful former employee does not, in the absence of something more, warrant a jury in finding that such generosity was prompted by a fraudulent motive, or to conceal a real fraudulent design. With regard to the policy of insurance, it might be sufficient to say that there was no evidence that that policy was taken out by the direction, or with the consent of this defendant or that he ever knew of its existence. The application for the policy seems to have been made by one English, an insurance broker, and to him the policies were delivered. The plaintiffs did not see fit to call Mr. English as a witness and that left the case without any evidence that English had been authorized by this defendant to make application for a policy in this form. It is, however, proper to observe that this application referred to "The draught or driving animals or vehicles stabled at Beech and Columbia avenues, and 3915 Market street, Philadelphia," and, again "The draught or driving animals or vehicles are used in Philadelphia (Kensington and West Philadelphia Districts) and vicinity." Even if it had been shown that this defendant had authorized the application to be made in this form, this would not have been sufficient to warrant a finding that the defendant was interested in the eighth district, which was in West Philadelphia. The paragraphs above quoted were inserted for the purpose of identifying the teams to be covered by the policy, and as a means to that end reference was made to the places where the horses were to be stabled and the districts where they worked. The stable at Beech and Columbia avenues was used in connection with the work of this defendant, while that at 3915 Market street was used in connection with the work of Eisele. The policy was to be issued in the name of Edwin H. Vare and P. C. Eisele "as their interests may appear." If the policy issued in

accordance with the application and a team while being
used by Eisele and stabled at 3915 Market street caused
any damage Eisele would be protected, although the
team was owned by this defendant. If the defendant
had taken away the team which he had loaned to Eisele
and returned it to his stable at Beech and Columbia ave-
nues and the team while there had caused any damage
the defendant would have been protected. This evidence
was certainly not sufficient to warrant a finding that
this defendant had any interest in the work upon which
the team, of which he was the owner, (one of the horses
of which caused this injury) was engaged. If a man
loans or hires a horse to another, to be used for the pur-
poses of the latter, the owner of the horse is in no wise
responsible for the negligent manner in which the horse
may be used: Bard v. Yohn, 26 Pa. 482; Sarver v.
Mitchell, 35 Pa. Superior Ct. 69; Durham v. Strauss, 38
Pa. Superior Ct. 620; Kelton v. Fifer, 26 Pa. Superior
Ct. 603; Lotz v. Hanlon, 217 Pa. 339; Herbstritt v.
Lumber Co., 212 Pa. 495. The request of the defendant
for binding instructions ought to have been affirmed,
and, this not having been done, judgment should have
been entered in favor of the defendant notwithstanding
the verdict.

The judgments are reversed and the record is remitted
to the court below with direction to enter judgment in
favor of the defendant non obstante veredicto.